## St. John *against* Camp.

*A* having, at the request of *B*, and for his accommodation, indorsed certain promissory notes, payable to *B*, and by him first indorsed, which were discounted at the bank for *B's* benefit; *A* having also, at the request of *B*, given *A's* promissory note to a creditor of *B*, for the proper debt of *B*; and *B* being justly indebted to *A*, by note and on book; the amount of *A's* claims against *B*, on these accounts, being 3069 dollars; in consideration of which, *B* gave *A* a bill of sale of certain goods, consisting principally of leather and unfinished boots and shoes, which, at the prices annexed, amounted to 3101 dollars; and by the terms of such bill of sale, *A* was authorized to take the property into his possession, and to sell and dispose of the same, as he should think proper, for his own use. It was the understanding of the parties, that if any thing remained of the property, after payment of *A's* claims, the surplus was to be returned to *B*. *A* immediately assumed the possession and controul of the property; and the sale was without any actual fraud, or intent to deceive the creditors of *B*. At this time, the notes so indorsed by *A* for *B's* accommodation, had not become due; but the makers of those notes were insolvent, and *A* assumed the payment thereof. In an action of replevin, brought by *A* against the creditors of *B*, who had attached this property, it was held, 1. that the contingency of the indorser's liability being fixed, by demand and notice, did not invalidate *pro tanto* the consideration of the sale; 2. that if otherwise, the residue of the consideration, in the absence of fraud, was sufficient to support the sale; 3. that the understanding between the parties to the bill of sale as to the surplus, if any there should be, (which was hardly possible,) did not, after the creditors had unsuccessfully availed themselves of it as a badge of fraud, render the sale invalid.

The cases of *Ayers* v. *Husted*, 15 *Conn. R.* 504.; *Pettibone* v. *Stevens*, 15 *Conn. R.* 19.; *Stutson* v. *Brown*, 7 *Cowen*, 732.; and *Goodrich* v. *Downs*, 6 *Hill* 438.—considered and explained.

THIS was an action of replevin, to regain the possession of sundry goods and chattels, which had been taken by the defendant, as a deputy sheriff, by virtue of three or four writs of attachment against *Daniel W. Bouton;* which goods and chattels the plaintiff claimed as his property. In connexion with the writ of replevin there was a count in trespass.

The defendant, in his plea in bar and avowry, averred, that at the time of taking the goods and chattels in the plaintiff's declaration mentioned, the property of said goods and chattels was, and still is, in said *Daniel W. Bouton*, and not in the plaintiff; and that said writs of attachment were duly re-returned, and the plaintiffs therein recovered final judgments against said *Bouton;* wherefore, the defendant prayed, that said goods and chattels might be returned to him, that he

might proceed to levy thereon, and sell the same, to satisfy said judgments and executions according to law.

The plaintiff traversed the averments in the plea and avowry regarding the title to the goods and chattels in question; and thereupon issues were joined. On these issues the cause was tried, at *Danbury, October* term 1844, before *Church,* J.

On the trial, it was admitted, that the articles in controversy were, until the 1st of *March,* 1842, the property of *Bouton.* The plaintiff claimed title thereto, by virtue of a bill of sale thereof, from *Bouton* to him, of that date. Of this instrument the following is a copy: " *New-Canaan, March* 1st, 1842. *Darius St. John* bought of *D. W. Bouton*——76 sides of upper leather, at 22s.—$190. &c. [specifying all the articles, consisting of leather, unfinished boots and shoes &c., with the prices annexed, the amount being $3101.79.] This bill of sale is given and made upon the following terms and conditions, and for the following considerations, *viz.* whereas said *Darius St. John,* at the request and for the accommodation of said *Daniel W. Bouton,* has given and signed, jointly with said *Bouton,* a certain note of hand, payable at the *Fairfield County Bank,* due on the 21st day of *March* 1842, for 265 dollars; and also one of *Thomas McFarland's* notes, dated *New-York, January* 20th, 1842, payable four months from date, for 280 dollars, 50 cents; and another of said *Thomas McFarland's* notes, dated *January* 26th 1842, at four months, for 421 dollars, 25 cents; also, one note drawn by *Henry Hudson,* dated *December* 21st, 1841, at four months from date, for 278 dollars, 58 cents; one of which notes is now in the bank, with said *Darius St. John's* indorsement: and also, said *St. John* has, at the request of the said *Bouton,* given his promissory note to *S. Raymond & Co.,* for the sum of 646 dollars, 44 cents; which was the proper debt of said *Bouton:* and said *Bouton* is indebted to said *St. John,* by note of hand, dated *May* 16th 1833, for 600 dollars, on demand, with interest; and for one other note, dated *May* 23d, 1841, for 134 dollars, 50 cents, payable on demand, with interest; and also for a book debt of 183 dollars—[amounting, with some interest, to 3069 dollars, 31 cents.] Now, the said *St. John* is hereby empowered to take said property into his possession, to sell and dispose of the same, as he thinks proper, for his own use. *Daniel W. Bouton.*"

St. John
*v.*
Camp.

The defendant claimed, that this bill of sale was founded on no sufficient consideration, and was fraudulent and void as against the creditors of *Bouton*.

To prove the consideration of the bill of sale, the plaintiff introduced, among other evidence, three promissory notes therein mentioned, *viz.* one note made by *Thomas McFarland*, dated *January* 20th, 1842, payable to the order of *D. W. Bouton*, four months from date, for 280 dollars, 50 cents; one note also made by *Thomas McFarland*, dated *January* 26th, 1842, payable to the order of *D. W. Bouton*, four months after date, for 421 dollars, 25 cents; also one other note, made by *Henry Hudson*, dated *December* 21st, 1841, payable to the order of *D. W. Bouton*, four months after date, for 278 dollars, 50 cents—accompanied by evidence, that all these notes were indorsed by *Bouton*, and also by the plaintiff, for *Bouton's* accommodation, and to enable him to negotiate them at the *Fairfield County Bank*, where they were discounted for *Bouton's* benefit.

The plaintiffs claimed to have proved, that before the bill of sale was executed, *Thomas McFarland* and *Henry Hudson* had become insolvent and utterly unable to pay said notes, or any part thereof; and that, when they severally came to maturity, they were taken up and paid, by the plaintiff, at the *Fairfield County Bank;* and that the plaintiff, when the bill of sale was executed, assumed the payment of said notes. The defendant contended, that inasmuch as said notes had not come to maturity when the bill of sale was executed, and the liability of *Bouton* was not fixed, but was merely contingent; and as he would be liable only in the event of the makers of said notes failing to pay them, and of his receiving legal notice thereof; the assumption of such liability by the plaintiff, formed no valid consideration for the bill of sale, and rendered it wholly void, as against the creditors of *Bouton;* or if it was not wholly void, it was void so far as these notes entered into the consideration; and that the defendant was entitled to a return of all the goods and chattels that were not necessary for the payment of the other debts and liabilities, which formed the consideration of the bill of sale; and the defendant requested the court so to charge the jury. The court did not so charge the jury, but charged them, that if the makers of these notes were in fact

insolvent, and this was known to *Bouton,* so that it was reasonably to be apprehended, that he would be compelled to pay them ; and if the plaintiff actually assumed the payment of these debts, and exonerated *Bouton* therefrom, to include them in the bill of sale, as a part only of its consideration, and without any actual fraud, or intent to deceive creditors, would not, as matter of law, render the bill of sale void.

The plaintiff introduced *D. W. Bouton,* as a witness, on the trial, who testified to the execution of the bill of sale, and to the agreement between him and the plaintiff; and upon his cross-examination, he testified, that if any thing remained of the property embraced in the bill of sale, after payment of the debts therein mentioned, such surplus was to be returned to him. The defendant contended, that such a stipulation or understanding between *Bouton* and the plaintiff, rendered the bill of sale void, as against *Bouton's* creditors ; and prayed the court so to charge the jury. The court did not so charge the jury, but charged them, that if the purpose of the parties was, to retain a surplus of the property assigned, and keep it away from creditors, for the benefit of *Bouton,* this would amount to an actual fraud, and would render the entire sale void : but if the parties had no such object in view, the sale would not, by reason of any such stipulation or understanding, be rendered void.

The jury found the issues in favour of the plaintiff; and thereupon the defendant moved for a new trial.

*Hawley* and *Butler,* (with whom was *Bissell,*) in support of the motion, contended, That the bill of sale was void, and so the court should have charged the jury.

In the first place, it was unconditional and absolute ; and, under the circumstances, could be supported only by a debt due from the vendor to the vendee, or a debt due from the vendor to another, which was assumed by the vendee. A " reasonable apprehension," or, in other words, a *probability of a debt,* is insufficient. *Sanford* v. *Wheeler,* 13 *Conn. R.* 165. *Ayres* v. *Husted,* 15 *Conn. R.* 504. 512, 13. If in this case, there was in fact an assumption of any thing, it was not an assumption of a *particular debt,* due or owing from *Bouton* to any one, but of a mere *contingent liability, viz.* the contingency that the maker would fail to pay, and that *Bou-*

*Fairfield.*
*June, 1845.*

*St. John*
*v.*
*Camp.*

*ton* would be rendered liable, by a demand and notice. The insolvency of the drawer, even though the drawer has beforehand informed the indorser, that he cannot and shall not pay, does not dispense with notice to the indorser. *Esdaile* v. *Sowerby*, 11 *East*, 114. *Whitfield* v. *Savage*, 2 *Bos. & Pul.* 279. *Jackson* v. *Richards*, 2 *Caines* 343. *Sanford* v. *Dilloway*, 10 *Mass. R.* 52. *Farnum* v. *Fowle*, 12 *Mass. R.* 89. 92. The charge did not require the jury to find, that *Bouton* would *necessarily* have to pay the notes, but only, that it was "reasonably to be apprehended," that he would. This cannot be sustained, except by holding, that, as against creditors, an absolute transfer of the debtor's property may be made, in consideration of a promise to relieve the vendor— not from an absolute debt—a fixed and certain liability—but "a reasonable apprehension" of a future liability, depending on two contingencies.

Secondly, the bill of sale shows no assumption in fact. It is without ambiguity, and cannot be affected by parol evidence. By its terms, the transfer is in consideration of an indorsement only. *Shepard* v. *Shepard*, 6 *Conn. R.* 37. *Sanford* v. *Wheeler*, 13 *Conn. R.* 165. *North* v. *Belden, Id.* 376. 381. *Goodrich* v. *Downs*, 6 *Hill* 438. *Chitt. Contr.* 664. and notes.

Thirdly, these objections are fatal to the entire bill of sale. No apportionment of the articles can be made. It cannot be determined that a title to any one article, or particular number of articles, passed by it. But if void in part only, the court should so have charged.

Fourthly, it was *constructively* fraudulent, irrespective of the intent of the parties. The trust for *Bouton* was secret, and variant from the apparent and absolute character of the conveyance. 1 *Sw. Dig.* 274, 5. *Naylor* v. *Fosdick*, 4 *Day* 146. 150. *Ingraham* v. *Geyer*, 13 *Mass. R.* 146. *The New-England Marine Insurance Company* v. *Chandler*, 16 *Mass. R.* 275. *Stutson* v. *Brown*, 7 *Cowen*, 732. *Goodrich* v. *Downs*, 6 *Hill*, 438.

*Booth* and *Dutton*, contra, contended, That upon the facts shown on the motion, the consideration for the sale was valid. The facts are simply these. The makers of the notes in question were insolvent. The plaintiff had endorsed them,

*Fairfield,*
June, 1845.

St. John
*v.*
Camp.

at the request of *Bouton,* who had thereby been enabled to raise the money on them at the bank. The plaintiff had assumed the payment of them, and had paid them. And in this transaction, there was no actual fraud, or intent to deceive creditors. Though the liability of *Bouton* was metaphysically contingent, it was morally certain. Now, there is nothing in the nature of a contingent liability, which prevents its being the subject of a valid contract. Such are contracts of insurance, of indemnity, of compromise of doubtful claims, &c. 1 *Sw. Dig.* 192. *Chitt. Contr.* 37. and notes. *Hubbard* v. *Savage,* 8 *Conn. R.* 215. *Union Bank of Georgetown* v. *Geary,* 5 *Pet. R.* 99. The law would, in this case, have *implied* a promise to indemnify ; which it would not do, if an express contract for that purpose would not be valid.

2. That if part of the consideration has failed, yet the defendant could not have judgment for the return of a part. In the first place, *Bouton* had no interest which is attachable. *Wilkes* v. *Ferris,* 5 *Johns. R.* 335. *Scott* v. *Scholey,* 8 *East,* 467. *Badlam* v. *Tucker,* 1 *Pick.* 389. Secondly, if otherwise, still, no such judgment could be rendered. The plaintiff has brought replevin for the whole ; the defendant avows for the whole : he could claim no specific articles. But if the rule now insisted on by him be correct, *viz.* that he was entitled to a verdict for a return of so much as should not be necessary to enable the plaintiff to pay debts, then it was the duty of the defendants to have shown by proof how much was necessary ; or, at least, that all was not necessary. *George* v. *Kimball,* 24 *Pick.* 234.

3. That the charge was correct as to the *surplus ;* and the sale was not void, by reason of the understanding that it should be returned. *Harris* v. *Sumner,* 2 *Pick.* 129. *Wilkes* v. *Ferris,* 5 *Johns. R.* 335. 345. But in order to raise the objection, it must be shown, that there was a surplus. This was not attempted. On the contrary, the case shows, that there could be none. The whole amount, at the prices in the bill, was 3101 dollars, 79 cents. The debts and liabilities were 3069 dollars, 31 cents. The difference is only 32 dollars, 48 cents. There is no claim that the property is undervalued. And when we consider its nature, consisting of sides of leather and unfinished boots and shoes, which are to be converted into money, while interest on the debts is con-

stantly accumulating, it would be marvellous if there should not be a deficiency.

CHURCH, J.  The defendant's plea in bar and his avowry, presented the same and only one question to the jury; whether the property described in the declaration, and which had been attached by the defendant, as deputy-sheriff, was the estate of the plaintiff, or belonged to *Daniel W. Bouton?*

*St. John* claimed title to it, by his bill of sale, dated *March,* 1, 1842. And if this was not fraudulent, or otherwise ineffectual against the creditors of *Bouton*, his title was good. He immediately assumed the possession and controul of the property; so that there is no question of constructive fraud growing out of the retention of possession by the vendor. And the question whether the sale was fraudulent in fact, has been submitted to the jury, with all the facts claimed by the defendant to constitute badges of fraud; and a fraudulent intent has been negatived : so that nothing remains to be decided, but whether the sale was void, for want of consideration, or was fraudulent *per se?*

The first claim made by the defendant, was, that a part of the expressed consideration of the bill of sale was deceptive, or that the particulars of which it was in fact made up, did not constitute a good and legal consideration.

It appears from the motion, that promissory notes to the amount of 980 dollars, 25 cents, had been obtained by *Bouton*, payable to himself or order. These notes having been indorsed by *Bouton*, were also, at his request and for his exclusive benefit, indorsed by *St. John*, and discounted at the *Fairfield County Bank,* for *Bouton's accommodation.* They had not yet become due, and the makers had all become insolvent, and the duty of providing for the notes had fallen upon *Bouton*, the first indorser. Under these circumstances, *St. John*, who was ultimately responsible, assumed the payment of these notes when they should become payable, for which he received in part the articles contained in this bill of sale.

The claim is, that, as *Bouton* had not been charged as indorser, by a notice of non-payment, and possibly never would be, although the makers of the notes were known to be in-

solvent, here was only a contingent liability upon *Bouton*, and the amount of these unpaid notes could not make up a part of the consideration of the bill of sale. It is true, *Bouton* was not yet legally fixed as indorser, because the notes were not then due. The makers were insolvent and could not pay; and the only contingency in the case, was, whether the bank would give due notice of non-payment, when the notes came to maturity. That such notice would be given, though not quite as certain as the operation of the laws of nature, yet was next to it; and so certain as that, not to foresee and provide for it, would be considered as gross negligence in business men.

*Bouton* had received the money upon these notes from the bank, and as the makers were insolvent, he was under the strongest moral obligation to pay them, even if not charged by notice. He had a right to pay them, if not legally bound to do it. May not a man provide for the payment of an usurious debt, or a demand barred by the statute of limitations? This can hardly be considered a case of contingent liability, on the part of *Bouton*. It was a duty imperative upon him to provide funds for the payment of these notes, and save harmless his indorser. But what removes all doubt from this feature of the case, is, that *St. John*, as a part of the consideration of this sale, assumed the payment of these notes, and did in truth pay them, as they fell due. *Little* **v.** *Little*, 13 *Pick.* 426. *Ayres* v. *Husted*, 15 *Conn. R.* 504.

But let it be conceded for this purpose, that the amount of these notes did not constitute, *pro tanto*, a valid consideration for the sale. What then? Here was still a consideration of more than 2000 dollars, undisputed and undoubted, for the sale in question. This would support it as a valid and legal bargain. And all that can be said in regard to it, is, that the bill of sale was made upon an inadequate consideration—*i. e.* the goods were sold for less than their value. This may be evidence conducive to prove fraud, and frequently, when connected with other proof, is very persuasive evidence for this purpose. But it is not fraud *per se*, and may, as in the present case, consist with entire purity of intention. As evidence of fraud, the defendant has already had the benefit of this inadequacy of price, and the jury have passed upon it.

*Fairfield,*
June, 1845.

St. John
*v.*
Camp.

The defendant appeared to stand, in this part of his defence, entirely upon what he supposed this court had recently decided, in the case of *Ayres* v. *Husted*, 15 *Conn. R.* 504. and the cases of *Sanford* v. *Wheeler*, and *North* v. *Belden*, which preceded it.   We do not think the defendant derives any aid from the authority of these cases.   All of them were cases, where the object was, to *secure debts*, either by mortgage or attachment, in which it was holden, that the real nature of the transaction should be disclosed ; and that the security would hold good no further, in a court of equity, than the truth had been told.   The two last of these cases arose under mortgages, and in which the policy of our recording system was chiefly considered, and upon which the decisions were based.   It was properly determined, that a creditor, who looks to the public records to learn the condition of titles, ought to find the truth there.   Those were all decisions in equity, and where it was competent for the court to distinguish between the different parts which entered into the consideration of the securities.   A court of equity has often interfered with mortgages and other conveyances, where the deed was not affected with actual fraud, but where the consideration was inadequate, or where the amount apparently secured, was not, all of it, in truth a debt ; and has, in such cases, and in many others, set them aside, or confirmed them *pro tanto*, as the principles of equity, or the rights of others, demanded.   But a court of law cannot do this. On the contrary, in a court of law, if the consideration be valuable, and no part of it illegal, the entire deed will be supported.   *Green* v. *Watt*, 2 *Sch. & Lefroy*, 492.   *How* v. *Weldon*, 2 *Ves.* 516.   *Sands* v. *Codwise*, 4 *Johns. R.* 530. 598.   *Boyd* v. *Dunlap*, 1 *Johns. Ch. R.* 478.   *Weeden* v. *Hawes*, 10 *Conn. R.* 50.   It is true, in an action upon a promissory note or other simple contract, if there is a partial want or a failure of consideration, a court of law will measure the damages to be recovered, by the actual consideration received, in many cases.   But the defendant here cannot have the benefit of this principle.   This is an action of replevin, in which the plea in bar and the avowry are entire, and reach alike all the property described in the declaration, and in the bill of sale ; and under which there can be no

judgment for a separation or apportionment.    There can be no judgment for a return *pro tanto.*

It was upon the principle of the authorities last cited, that we decided the case of *Ayres* v. *Husted,* upon which the defendant so much relies.    In that case, the court does not say, that the contingent liabilities included in *Crissey's* note to *Husted,* rendered that note void ; on the contrary, we decided, " that there is no principle on which a note, the consideration of which consists of claims, some of which are valid and others invalid, can be held, in the absence of fraud, to be wholly void."    And in that case, also, the principle is fully recognized, that a promise, by a surety, to assume the debt of the principal, or to indemnify him from it, constitutes a valid consideration.    When it is recollected also, that this is the case of an absolute sale, and not a mere pledge or security into which third persons have a right to enquire, we are at a loss to discover how the case of *Ayres* v. *Husted* and the other cases referred to in equity courts, can be brought to sustain the defendant in the claim he now makes, that this bill of sale is void *in toto.*

A distinct ground of objection to the validity of this sale, was, that there was proof of a secret trust between the parties to it, for the benefit of the vendor ; and thus it was constructively fraudulent, if not actually so.    This objection was founded upon what *Bouton* testified upon his cross-examination :    " That if any thing remained of the property embraced in said bill of sale, after payment of the debts therein mentioned, such surplus was to be returned to him."    We here remark, that between the debts which constituted the consideration of the sale and the inventoried value of the articles sold, the difference was only 32 dollars, 48 cents, in an amount of more than 3000 dollars ; and the real value could only be determined, by an actual sale, as provided for, in the instrument.

If the purpose and intention of the parties was, by withdrawing these effects from the reach of creditors, thus to provide a secret fund for the vendor, it would have been a trust which the law would not sanction.    Such was the case of *Pettibone* v. *Stevens,* 15 *Conn. R.* 19. in which this court say, that " every attempt to draw property from the creditor, *with a view* to prevent or hinder its being taken, by attachment or

*Fairfield,*
*June, 1845.*

St. John
*v.*
Camp.

execution, is, in effect, an attempt to defeat the law." The same principle is the prominent one in *Stutson* v. *Brown,* 7 *Cowen* 732. and in all the cases cited by the defendant, except the case of *Goodrich* v. *Downs,* 6 *Hill* 438. Fraud, say the courts, is the judgment of law upon facts and intents. Of course, the intent is the controuling feature in all these transactions. The decision in the case of *Goodrich* v. *Downs,* was placed, by the court, upon the peculiarity of the statute of the state of *New-York* on that subject; and the court say, under that statute, neither the court nor the jury has any thing to do with the question of intent. This introduces a new principle, never before recognized by the courts, where possession accompanied the sale.

If a man were to pay a debt of 90 dollars, by the delivery of a horse worth 100 dollars, no body would suspect fraud, if the vendee stipulated, as an honest man should, to repay the difference, as soon as the horse should be sold. It would, on the contrary, afford a reasonable ground of suspicion, if the stipulation had been, that the vendee should retain the difference from the vendor and his creditors. In the present case, there was hardly a possibility that the avails of a sale would exceed the debts; but if they should, every principle of fair dealing required *St. John* to repay to *Bouton* such balance as might remain after a full indemnity; and an agreement to do this, without any intention to delay creditors, was not chargeable with fraud, either actual or constructive. So far as this circumstance might have influence, as being a badge of fraud, the defendant has availed himself of it, on the trial. *New-England Marine Insurance Company* v. *Chander,* 16 *Mass. R.* 275. *Forbes* v. *Marsh,* 15 *Conn. R.* 384. *Calkins* v. *Lockwood,* 16 *Conn. R.* 276. *Wilkes* & al. v. *Ferris,* 5 *Johns. R.* 344.

A new trial must, therefore, be denied.

In this opinion the other Judges concurred, except Storrs, J., who came into court after the case was partly argued, and declined to give any opinion. (*a*)

New trial not to be granted.

(*a*) The absence of Judge *Storrs,* in this and the two preceding cases in *Fairfield* county, and during the whole term in *Litchfield* county, was occasioned by the sickness and death of his mother. He resumed his judicial duties, *Wednesday* morning, *June,* 25th, 1845.