The State to use Kramer v. Mason.

THE STATE *to use of* KRAMER *et al.* v. MASON *et al.*, *Appellants.*

1. **Surety :** ACCOMMODATION INDORSER. An accommodation indorser may, in consideration that he assume the liability, and in order to protect himself on his endorsement, buy goods of his principal, even though in failing circumstances, and he will be regarded as a creditor of his principal and not as a mere purchaser of the goods sold.

2. **Instruction :** ASSUMING FACTS. An instruction which assumes facts should not be given.

*Appeal from St. Louis City Circuit Court.*—HON SHEPARD BARCLAY, Judge.

AFFIRMED.

THE court gave the following instructions at the request of plaintiff :

"The court instructs the jury that the only question herein is whether the transfer of the property in controversy to plaintiffs was valid ; the validity of no other transfer is at issue in this cause.

"1.   A debtor in failing circumstances has a right to prefer one of his creditors to another, or any number of them to the exclusion of others. A mere preference alone is no fraud. A debtor, therefore, may lawfully pay, either in money or property of like amount, one or more of his creditors their demands in full and allow others to go unpaid in whole or in part; and if the creditor who receives such a preference does so only for the purpose of receiving his demand, his payment is valid, although at the time he receives it he may know his debtor owes other demands, and that he is, by such payment, receiving a preference; but if in accepting such payment or transfer of property therefor, the said creditor does not act solely with the purpose of obtaining a preference for himself, also thereby intends to aid the debtor in hindering, delaying or defrauding his other creditors (irrespective of the preference such creditor secures thereby), then such intent makes such payment or transfer of property fraudulent and void. If then, on the eighteenth day of April, 1883, Isaac Trepp was indebted to the Fourth National Bank of St. Louis, for the note of three thousand dollars, read in evidence, and to Kramer & Loth, or said bank, in the amount of the note for $529.06, and to Kramer & Loth on open account for $171.68, and on that day sold and delivered the goods in controversy to plaintiffs, in payment of his indebtedness to them, and in consideration that they would pay off and discharge the said three thousand dollar note to said bank, then, and in that case, in the absence of any intent on the part of the plaintiffs to do more than secure payment of Trepp's indebtedness to them and so protect themselves against their liability to said bank, in respect of said note, or notes, such sale of said property was a valid sale and did operate to pass the bill to them free from the claim or claims of other creditors of Trepp's.

"2.   The jury are instructed that fraud is not to be presumed, but must be proven by the party alleging it, and therefore, in this case, by the defendants. And

while it need not be established by direct and positive evidence, but may be proven by the facts and circumstances indicative of it, still mere matters of suspicion, which are not sufficient to satisfy the mind and conscience of its existence, do not establish it, and it should never be imputed, when the facts and circumstances upon which it is predicated are as consistent with a lawful purpose and intent as with an unlawful one.

"3. If the jury find for the plaintiffs, they will assess as the damages, the reasonable market value in St. Louis, on the eighteenth day of April, 1883, of the property herein in controversy, including the portion thereof which it is admitted was replevied ; the value of the portion replevied should, however, be taken to be six hundred dollars, that being the admitted value thereof. The jury may, however, further allow and assess as damages interest upon the said value of said property herein in controversy from said twentieth day of April, 1883, to this date, at the rate of six per cent. per annum."

Of its own motion the court gave the following instruction :

" The jury are instructed that if they believe from the evidence that Trepp made the transfer of the goods in question to plaintiffs, Kramer & Loth, with intent to hinder, delay or defraud his creditors and that Kramer & Loth participated in such intent, as explained in instruction numbered two, then the jury must find for defendants.

" The jury are instructed that it is not necessary to establish a fraudulent intent by direct and positive evidence, but that an intent to defraud may be established by inference in the same way as any other fact, by taking into consideration the acts of the parties, and all the facts and circumstances of the case."

The court refused the following instructions asked by defendants :

"1.   The court instructs the jury that an actual agreement or conspiracy between Trepp and Kramer that the latter would aid the former to defraud his creditors, does not have to be shown.   It is sufficient to avoid the sale if the jury believe from the facts and circumstances that Kramer either knew of the fraudulent purpose of Trepp, or having good reason to suspect it, purposely refused to make inquiry and remained wilfully ignorant.

"2.   The court instructs the jury that the plaintiffs, Kramer & Loth, were merely indorsers upon the note made by Trepp to their order for three thousand dollars, which has been read in evidence ; that on the eighteenth day of April, 1883, when plaintiffs obtained the goods in controversy in this action from Trepp, the said note upon which said plaintiffs were thus endorsers was not due and payable.   Hence the court instructs the jury as a matter of law, that notwithstanding the execution by Trepp of the paper signed by him, which has been read in evidence, the plaintiffs were not then creditors of the said Trepp, with respect to the said note for three thousand dollars in any sense whatever.

" The jury are further instructed that the right and title of plaintiffs in and to such goods, as were taken in satisfaction of said note consequently depend upon the consideration whether by reason of the facts and circumstances developed by the testimony said plaintiffs were purchasers in good faith from Trepp of that portion of the goods.   And before the jury can find that plaintiffs were such purchasers in good faith they must believe from the evidence, first, that plaintiffs bought without notice of any bad intent on the part of Trepp ( if the jury find that there was any such bad intent ) ; second, that the plaintiffs bought the property for a valuable consideration, and third, that the plaintiffs actually paid the purchase money before they had notice of such bad intent on the part of Trepp.

"If, therefore, the jury find from the evidence that as to the purchase these three conditions have not been satisfied, there can be no recovery in this action, unless the jury further believe, from the evidence, that the plaintiffs were creditors to the extent of the note for $529.06, read in evidence, and the open account for $171.68, also shown in evidence, and that in payment of such last-named note and account received from Trepp, that portion of the goods sued for, which the jury believe was sufficient in point of reasonable value to satisfy such note and account, and unless, also, the jury find not only that the conditions of purchase heretofore indicated have been satisfied as to the balance of the goods in controversy, but are able from the evidence to distinguish and separate that portion of the goods taken by way of purchase from the remainder of the goods taken by way of preference. And even as to those goods taken by way of preference there can be no recovery in this action if the jury believe, from the evidence, that in making such disposition of them Trepp thereby intended to hinder, delay or defraud his creditors, other than those preferred, and that plaintiffs participated in, or were privy to such fraudulent intent or purpose.

"Under the first branch of this instruction, in determining whether plaintiffs, as purchasers, were aware, either at the time they took the goods or before the time when the jury believe, from the evidence, they paid for them, of a fraudulent intent on the part of Trepp in making such disposition of the goods, it is not necessary that the jury should believe, from the evidence, that the plaintiffs actually knew what the intention of Trepp was in the premises, but it is sufficient if the jury believe, from the evidence, that the circumstances surrounding the parties at either of the times thus indicated were such as were calculated to convey to the mind of a man of ordinary experience notice of the fraudulent intention on the part of the vendor of the goods."

*Nathan Frank* and *Krum & Jonas* for appellants.

(1)   As between debtor and creditor, the situation with reference to the acquisition of title to personal property is different from that between vendor and vendee. *Shelley v. Boothe*, 73 Mo. 74; *Dougherty v. Cooper*, 77 Mo. 532; *Hearne v. Keith*, 63 Mo. 84. (2) The principles governing the sale of Trepp to Kramer are the same as that of a sale by one who is insolvent to a purchaser who is not a creditor of such insolvent vendor. *Hege v. Frank*, 22 Mo. App. 46; *McNichols v. Richter*, 13 Mo. App. 520; *Frederick v. Allgaier*, 88 Mo. 598; *Potter v. McDowell*, 31 Mo. 62; *Kuykendall v. McDonald*, 15 Mo. 416.

*David Goldsmith* for respondents.

(1)   The claim that an accommodation endorser has not the right to accept a preference which the law gives to all creditors is utterly without the support either of authority or reason.   It is expressly and directly denied by this court in *Albert v. Besel*, 88 Mo. 150, and *Duvall v. Raisin*, 7 Mo. 449, and by the following authorities elsewhere:   Bump on Fraud. Convey. [ 3 Ed.] 225, 187; *Stevens v. Hinckley*, 43 Me. 440; *McWhorter v. Wright*, 5 Ga. 559, 560; *St. John v. Camp*, 17 Conn. 222; *Buffum v. Green*, 5 N. H. 71.

SHERWOOD, J.—Action on sheriff's bond, brought to the use of Kramer & Loth, because of a levy made by Mason, as sheriff, by virtue of a writ of attachment on a large quantity of merchandise as the property of one Trepp, which property plaintiffs claimed as their own, and which they alleged was lost to them by reason of the levy and the seizure of the goods.   The answer of the defendants, among other things, alleged in substance and effect, that the property seized under the writ was

the property of said Trepp, who had fraudulently transferred it to plaintiffs with a view to defraud the creditors of Trepp.

The evidence introduced tended to show fraud, and there was evidence of a contrary effect. The instructions given and those refused will accompany this opinion.

Trepp was indebted to Kramer & Loth, the relators, in the sum of $171.68, on open account, $529.06 on note, and they were accommodation endorsers for him on a note for the sum of three thousand dollars, payable at the Fourth National Bank; the indebtedness of Trepp then aggregating some thirty-seven hundred dollars. The bill of sale recites that the goods mentioned therein were transferred to relators upon consideration of the account and note for $529.06, and in satisfaction thereof, and upon consideration that they assumed the payment of the note for three thousand dollars. Both these notes were, it seems, in bank, and when afterwards they matured they were paid by relators; this was something over a month subsequent to the attachment of the goods, and the verdict of the jury fixes the value of those goods at something less than the price which relators paid, and assumed to pay for them.

The main point in the cause is this: Are relators, with respect to the note for three thousand dollars, to be regarded as creditors of Trepp, or are they to be regarded as mere purchasers of the goods sold? This question is answered by the case of *Albert v. Besel*, 88 Mo. 150, where, in similar circumstances, a surety on a promissory note was regarded as a creditor and not as a purchaser, and, therefore, to be governed by those rules which pertain to those persons, who, in order to secure some existing indebtedness, or to secure themselves against some existing liability, buy at a fair valuation, the property of their failing debtor and at the same time, in consideration of their purchase, satisfy the debt or assume the liability. The fact that in this case, the relators

were accommodation endorsers of Trepp, does not alter the complexion of this case, nor cause it to differ from the one cited ; for, as between the bank and relators, the latter were as firmly bound to pay the note which they had endorsed for the insolvent, Trepp, as though they had been his mere sureties on the bank paper. *St. John v. Camp*, 17 Conn. 222 ; Bump on Fraud. Convey. [ 3 Ed.] 187, 225, and cas. cit.

The instructions given by the court are in accord with this position, and they are sufficiently comprehensive to cover the issues in the case. As to the first instruction asked by defendants, it was properly refused, aside from reasons already stated, because it assumes a fraudulent purpose on the part of Trepp.

Therefore, judgment affirmed. All concur, RAY, J., absent.