# WILLIAM D. BOGGS

## *vs.*

## VIOLA C. BOGGS.

*Support of Child—Duty of Father—Deprivation of Custody—
Agreement Pending Divorce—Action by Mother—
Cost of Necessaries.*

The primary liability of the father for the support of the children is not affected by the fact that a decree of divorce gave the custody of the children to the mother, without making any provision for their support. pp. 428-435

The mother of an infant child is not, by a decree granting her a divorce, estopped from maintaining an action against the father for necessaries subsequently supplied by her for the support and education of the child; and that the court which rendered the decree was by statute authorized to provide therein for the support of the child is immaterial, if it did not so provide. pp. 431, 439

While agreements made pending suits for divorce between the parties thereto are not in all cases and under all circumstances necessarily void, yet they are usually regarded with suspicion, and while the court may, in making its decree, take them into consideration, it is not bound to do so, nor will any such agreement be permitted to release or relieve either party of any natural or legal obligation, owed to the children of the marriage, when it would not be to the interest of or for the welfare of the children to permit that to be done. p. 438

An agreement between husband and wife during the pendency of a suit by her for divorce on the ground of adultery, relieving the husband from liability for the subsequent support of a child of the marriage, in consideration of the immediate payment by him of a named sum, inadequate for the reasonable support and education of the child, *held* invalid as opposed to the welfare of the child, and consequently no defense to an action by the wife for the cost of necessaries subsequently purchased by her for the child. pp. 438, 439

A judgment for the defendant in a suit for the cost of necessaries alleged to have been purchased by the plaintiff for defendant's child before a certain date is not *res adjudicata* in a suit by the same plaintiff against the same defendant for the cost of necessaries alleged to have been purchased after that date for the child.                                    p. 439

A judge is not disqualified to sit in a suit to recover for necessaries furnished after a certain date to defendant's child because he has previously sat in a suit by the same plaintiff against the same defendant to recover for necessaries furnished the child before such date.                        p. 440

An exception based on the refusal of a prayer offered at the conclusion of plaintiff's case, seeking to take the case from the jury, cannot be considered if defendant elected to go on with his case and offered testimony in support thereof.          p. 440

The refusal to permit counsel for defendant to refer to the record of another suit between the two same parties *held* proper, this being a collateral matter not relevant to any issue in the case.                                        p. 440

Certain typewriting on the cover of an agreement, forming no part thereof, *held* immaterial and inadmissible.      p. 441

In an action by a woman against her divorced husband for the cost of necessaries purchased by her for their infant son after a named date, *held* that there was no prejudicial error in admitting evidence as to payments made by her for the son's support prior to that date, it complementing other testimony in the case, and showing the application of money received by her from defendant under an agreement made at the time of the divorce.                                      p. 441

*Decided May 4th, 1921.*

Appeal from the Circuit Court for Queen Anne's County (ADKINS, C. J., and HOPPER, J.).

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Edwin H. Brown, Jr.,* and *Herbert E. Perkins,* for the appellant.

*S. Scott Beck* and *Charles C. Wallace,* with whom was *Thomas J. Keating* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the court.

Viola C. Boggs in November, 1914, filed in the Supreme Court of the State of New York, in New York County, a bill of complaint against William D. Boggs, her husband, for an absolute divorce on the ground of adultery. In addition to asking for a dissolution of the marriage, the complainant in that suit also asked for the custody of Thomas Brandon Boggs, an infant, the only child of said marriage, who was born April 18th, 1905, and that provision be made out of the property and income of the defendant for the support of the plaintiff and the said child, and for counsel fee and expenses. At the time that suit was instituted both parties were residents of the State of New York, and in due course the defendant was summoned to answer the complaint, but failing to answer or appear, an interlocutory judgment by default was entered against him on January 25th, 1915, and on May 21st, 1915, a "final judgment on default" was entered against him, after testimony had been taken in support of the bill. In that judgment or decree, after reciting that the "defendant being fully in fault and a decision and interlocutory decree of divorce in favor of the plaintiff and against the defendant having been made on the 25th day of January, 1915," and duly filed, and no subsequent order affecting it having been passed, the court dissolved the marriage and divorced the plaintiff from the defendant, allowing the plaintiff the privilege of remarriage but denying that privilege to the defendant without the court's permission, and it further decreed that the plaintiff have the custody of the infant child Thomas Brandon Boggs, but allowed the father the privilege of access to the child at stated periods.

During the pendency of this divorce proceeding and before the final decree, the parties to it entered into an agreement "for the purpose of settling out of court the questions of alimony, counsel fees and the custody of said child." This agreement provided that, in the event the provisions thereof were faithfully performed, the plaintiff's motion for counsel fees and alimony should be withdrawn. The provisions referred to were in substance as follows: (a) that the defendant would convey for the benefit of the wife and son property in Bergen County, New Jersey, valued at $900, and (b) his interest in a certain agreement valued at $625, and (c) that he would pay for the benefit of his wife $825, and (d) would return to her a diamond ring, her property, or a pawn ticket therefor and $200, or $400, the value of the ring.

In consideration of these provisions the complainant in the divorce suit agreed "to accept the same and to maintain and support herself and one child of said marriage until he is able to support himself, and the said second party agrees not to make any further claim on the party of the first part for the support of herself or their said child, without, however, waiving the benefit of the provisions of Sections 1759 and 1771 of the Code of Civil Procedure, or any other law in such case made and provided." In addition to what has been set forth, the agreement also contained other provisions, which need not for the purposes of this case be referred to further than to say that they related to the custody of the child, the separation of the parties, the enforcement of the terms of the agreement, and that it looked to, but was not necessarily dependent upon, a dissolution of the marriage. It also provided that the complainant should have certain furniture, and that the defendant would indemnify the complainant against the payment of liens and charges owed by him on the properties conveyed to her, and that it was to be construed according to the law of the State of New York.

Some time after the entry of the final decree in the divorce case, the defendant William D. Boggs removed to

Maryland, where he appears to have remarried and, at the time of the institution of this suit, owned and operated a farm valued at some twelve or fifteen thousand dollars near Crumpton in Queen Anne's County, which he appears to have paid for in part with money received by him from his father's estate after the divorce had been granted.

Viola C. Boggs, the plaintff in this case, continued to live in New York, after she had been divorced from her husband, and for the purpose of supporting herself and her child she took employment as a clerk. The property she received under the agreement referred to did not yield the amount at which it was appraised in the agreement, so that she actually received from the proceeds of a sale of it and in cash paid by her husband but $1,625 for the support of herself and her son. She had no productive property of her own and, her earnings being insufficient to support herself and child, she applied the money received under the agreement to their support, and when that was expended she pawned her jewelry for the same purpose. From time to time during this period Mrs. Boggs made demand upon the defendant for financial assistance in the maintenance and education of their son and, upon his refusal to contribute anything for that purpose, she sued him in the Circuit Court for Kent County for various sums aggregating $1,738.78, which she claimed to have expended for the support and education of their infant son between May 23rd, 1915, and April 5th, 1919, in which case the verdict and judgment were in favor of the defendant.

Subsequently, on January 6th, 1920, she brought this action against the defendant for necessary expenditures made by her for the maintenance and education of their infant son from April 6th, 1919, to January 6th, 1920. The declaration as amended is in assumpsit and contains the common counts in the usual form, and in connection with it there was filed a bill of particulars setting out in detail the items comprising the cause of action. A demurrer to the narr. as amended was interposed and overruled, and the defendant

then filed three pleas in bar of the action. The first plea set up the divorce proceeding to which we have referred; the second set up the divorce proceeding together with the agreement to which reference has also been made, while the third plea set up the action and judgment in Kent County between the same parties in the following language.

> "That in and by a suit brought in the Circuit Court for Kent County, Maryland, No. 27 Trials, Apr. Term, 1919, in which Viola C. Boggs, plaintiff, sued William D. Boggs, defendant, for the sum of $1,728.78 dollars for the maintenance and support of their infant from May 22, 1915, to April 5, 1919, a verdict was rendered for said defendant, and a judgment for said defendant entered thereon. And that said judgment was rendered on the same cause of action mentioned in the declaration, and still is a subsisting judgment."

The court sustained a demurrer to the first and third pleas and overruled a demurrer to the second plea. The plaintiff replied to the second plea (1) that the agreement was invalid in so far as it related to the support of the child, (2) that it was not kept by the defendant, and (3) that the plaintiff had expended in the support and maintenance of the child all the monies received under it and that, since April 6th, 1919, she had been without means or money to furnish necessaries for his support, maintenance and education. (In referring to these pleadings, where the pleading first filed has been voluntarily amended, it is treated as an original pleading.) While the docket entries are somewhat confused, it is inferred that a demurrer was filed to this replication and overruled. The defendant then joined issue on it and filed the general issue as an additional plea, upon which the plaintiff joined issue. Upon the issues thus made a trial was had which resulted in a verdict and judgment for the plaintiff, from which the defendant appealed.

The record contains seven exceptions, one of which relates to a supposed disqualification of one of the presiding judges,

two to rulings of the trial court upon the prayers, one to the court's refusal to permit counsel in his opening statement to "refer to the records in the case in Kent County" and to a remark of one of the judges sitting in the case made in connection with that ruling, while the others refer to matters of evidence.

The questions presented for our consideration by these exceptions, and by the several demurrers to which reference has been made, may be thus stated: first, whether the appellee is estopped either by the decree in the divorce proceedings in the State of New York, or by her agreement made in connection therewith, from maintaining an action for necessaries actually supplied for the support and education of the appellee's infant son; second, whether this case was, as a result of the action in Kent County between the same parties, *res adjudicata*, and third, whether one of the Judges who presided in that case was by that fact disqualified from presiding in the present case, and these questions we will consider in the order in which they have been stated.

In proceedings for divorce where, upon the application of the wife, she is granted a divorce and the custody of the infant children of the marriage, but the decree granting the divorce makes no provision for their support, there is a sharp conflict in the decisions of the courts of the several States of the Union, as to whether the father, from whose custody they have been taken, or the mother, into whose custody they have been given, is liable for such reasonable expense as is necessarily incurred for their support and education. One line of cases holds that a decree granting the mother the custody of the children, but making no provision for their maintenance, relieves the father of any further liability for their reasonable support, and this rule and the reasons upon which it is said to rest are very well defined in *Nelson, Divorce and Separation,* Par. 983, in which it is sad: "The father is not liable for the support of his children where the decree has granted the custody of the children to the wife and contains

no provision for their support. There are several reasons for this. The statute having made it the duty of the court to provide for the custody and maintenance of the children on divorce, it will be presumed that the decree has made all the provision that was necessary. The decree is conclusive as to the mutual rights and obligations of the parties, subject to the right to have such decree modified as subsequent exigencies may require. The divorce makes the parties strangers. The father is not liable to a stranger who furnishes the children with necessaries unless under such circumstances that a contract will be implied." This view, however, is not in accord either with the weight of authority or the trend of the later decisions, and is moreover, in our opinion, opposed to a sound and just regard for the interest of society and the welfare of the children, who, while not parties to the proceeding, are, nevertheless, profoundly affected by its result.

The primary liability for the support of the children during the marriage of the parents is imposed by the common law upon the father, and that obligation is by the statute in force in this State made imperative and mandatory. *Art.* 27, *Sec.* 75, *Code Pub. Gen. Laws.* As a correlative incident of that duty the father at common law was entitled to the custody and to the services of the children he was required to support. These principles are so generally recognized that they may be assumed. But when the marriage relation is dissolved, and the custody of his children taken from the father, the question as to whether his obligation to provide for their reasonable support survives his loss of their custody is not so well settled. Reason and the weight of authority say that it does, and that view was adopted by this Court in *Alvey* v. *Hartwig,* 106 Md. 254. In that case the plaintiff sued the defendant, from whom she had been divorced in a proceeding, of which he was notified by publication, for necessaries furnished their children, whose custody had been by the divorce decree awarded to her. The defense, as stated in the opinion, was: "The contention of the defendant is

that the law does not imply an obligation on the part of the
defendant, to pay the plaintiff, for her support and mainte-
nance of the minor children of the marriage, where she has
obtained a divorce from him and has in the decree, been
awarded the care and custody of such children; and the de-
cree is silent as to the maintenance thereof; that the right
of the parent to the services of the children and the obliga-
tion of maintenance of the same, devolving upon the parent
are reciprocal rights and obligations." In considering that
defence the court in that case said: "As the duty of a
father to support his minor children lies at the root of the
controversy in this case we will examine the law on that
question first, for there is a difference of opinion in the courts
of various states as to this. In some the common law is in-
terpreted as casting the burden of support upon the parents
equally, and some casting it primarily upon the father, and
only secondarily upon the mother. CHANCELLOR JOHNSON,
in *Thompson et al.* v. *Dorsey et al.,* 4 Md. Ch. Dec. 151, uses
this language: 'A father is bound to educate and maintain
his infant children, and if another person performs this
natural duty for him with his knowledge and consent, the
father is liable to pay a reasonable sum to such person.'
CHANCELLOR BLAND in *Addison* v. *Bowie,* 2 Bl. 585, says:
'A father is bound to maintain his infant children, if able.'

"By the Act of 1896, Chapter 73, and 1904, Chapter 44,
the wilful neglect to provide for the support of a minor child
is also a misdemeanor punishable by fine or imprisonment in
this State.

"But in this case the appellant claims that even if that
be the law in Maryland—and we think it is beyond dis-
pute—that he, the appellant, is released from this obligation
to support his infant child for the reason that his wife has
obtained a divorce from him and has been granted the cus-
tody of said child.

"Whatever may be the decisions in other states, and while
there are undoubtedly conflicting opinions, we cannot give

our assent to the position taken by the appellant on this point.

"Many courts of high authority have declared most emphatically that it is the duty of the father to provide reasonably for the maintenance of his minor children, and that this liability is in nowise affected by the fact that the custody of said children may have been taken away from him by the decree of a court of competent jurisdiction. This primary obligation arises not alone from the husband's common law right to his wife's estate, but rather from his natural headship of the family, and upon his being by nature and the present constitution of society the bread winner and provider. The law also gives him the primary right to his children's services and earnings, which it could not in fairness do if the mother were in the first place equally bound for their support. There may be and doubtless are many cases where the right to the custody and services of the children are taken away from the father because of his misconduct. His natural right to this custody and these services is forfeited by his misconduct, and surely if his misconduct works a forfeiture of his rights to custody and earnings, he ought not to be absolved from his natural and usual duty of supporting them. To allow it to bring about any such result, would simply be allowing the father to take advantage of his own wrong, for all a father would have to do to avoid his natural obligation to his children would be to desert his family, conduct himself in such a way as to show that he is an unfit person to have the custody of his children, and then, when on account of his own wrongful doings and unfitness, the court takes the custody of the children away from him, and awards it to the mother, it relieves him of the obligation which the law of nature and the law of the land places upon him."

It is true that in that case, in referring to the contention made there that, since the decree awarding the custody of the children to the mother was silent as to support, the plaintiff was for that reason estopped from maintaining a suit against

their father for such support because he had been deprived
of their custody, the court used this expression, "as we view
it, if the defendant had been summoned in the divorce case,
it would be clear that the plaintiff would be barred in the
case at bar," but we cannot assume that by that language it
was meant to decide that, where the defendant in a divorce
case is summoned but fails to appear, and no provision is
made in the divorce decree for the support of the children,
whose custody is given to the mother, that the liability for
the children's support becomes a litigated and adjudicated
question, on the ground that the court had the power, had it
chosen to exercise it, to have determined that question, because
such a construction would be contrary to the rule stated earlier
in the opinion, but the court must by that expression be under-
stood to have meant that where in such cases the liability of
the father for the support of the children has been a subject
of actual litigation or controversy and the court under such
circumstances has ruled in regard to it, that then all parties
to the suit are bound by the decree, and that this is the proper
construction is, we think, clear from the following language,
which occurs after the expression to which we have referred:
"The doctrine of estoppel is that as between parties to an
action each is bound by orders or decree passed with reference
to subject matters over which the court had jurisdiction, but
because the court may have been silent on some subjects, it
will not be presumed to have gone into them all, *and intended
to pass judgment on points upon which it was silent,* and
especially would this be true where the decree of divorce was
based upon publication, and where the court which granted
the divorce could not by any possibility have had jurisdiction
to compel the father to make an allowance for the support
of the children." These principles are in accordance both
with the weight of authority and the trend and direction of
the modern development of the law. In referring to the con-
flict in the authorities in regard to them it has been said:

"One line of authorities holds that, unless there is some statutory provisions to the contrary, a decree, awarding custody of the children to the mother, but making no provision for their support, has the legal effect to relieve the father of liability for the reasonable support of the children while in the mother's custody, unless, it has been held, he had so conducted himself that it became necessary and proper to deprive him of their custody.

"A majority of the well-considered cases denounce and condemn this cold and illogical doctrine, which not only ignores the rights and welfare of the child, but also enables the husband and father to take advantage of his own wrong, and hold that the legal obligation of a father for the support of his minor children is not impaired by a decree of divorce at the suit of his wife for his misconduct, which gives the custody of the children to her, but is silent as to their support. This liability is not limited or controlled by the regulations governing the allowance of alimony to the wife. If, under such circumstances, he refuses or neglects to support them, the mother may recover from him in an original action a reasonable sum for necessaries furnished for their support after such decree; but the right of action does not lie until the husband refuses to respond to a just claim for the child's maintenance." 19 *C. J.* 354.

In the case of *Evans* v. *Evans*, 125 Tenn. 116, Ann Cases, 1913 C, 294, the court, discussing the question, said: "The reasons favoring the majority view are that the law of nature and the law of the land require of the father the support of his minor children. This is a definite and fixed obligation, which both the children and society itself are entitled to have enforced against him. If divorce is sought by his wife, the mother of the children, it can only be obtained by her for some wrong or dereliction on the part of such husband and father, shown to have been committed. A divorce so obtained, at the wife's suit, cannot weaken the father's obligation to his children. The decree of divorce is founded upon his mis-

conduct. To hold that such a decree discharged him from the support of his children would be to allow him to profit by his perversity, or, in familiar phrase, to take advantage of his own wrong." To the same effect is the case of *Pretzinger* v. *Pretzinger,* 45 Ohio St. 457, in which it is said: "Issues of fact were joined between the parties, and, upon submission to the court, they were found for the defendant in error; * * * Izora Pretzinger was divorced from her husband by reason of his misconduct, and his ill-treatment and neglect of her; and was, in consequence, awarded the custody, nurture, education, and care of their minor child, then about eight years of age. The court decreed an allowance to her as alimony, but it does not appear that an allowance was made to compensate her for the expense of her son's maintenance. For several years after the granting of the divorce, she furnished to her son such boarding, clothing, care and attention as were necessary and appropriate to his comfort and condition in life. When the divorce was granted the father was insolvent, but at the rendition of the judgment in the case at bar he was solvent, and able to support his son. The duty of the father to provide reasonably for the maintenance of his minor children, if he be of ability, is a principle of natural law. And he is under obligations to support them, not only by the laws of nature, but by the laws of the land. As said by CHANCELLOR KENT: 'The wants and weaknesses of children render it necessary that some person maintains them, and the voice of nature has pointed out the parent as the most fit and proper person.' 2 *Kent's Com.* 190. And see *Trustees* v. *Trustees,* 3 Ohio, 100; *Edwards* v. *Davis,* 16 Johns. 281. This natural duty is not to be evaded by the husband's so conducting himself as to render it necessary to dissolve the bonds of matrimony, and give to the mother the custody and care of the infant offspring. It is not the policy of the law to deprive children of their rights on account of the dissensions of their parents, to which they are not parties, or to enable the father to convert his own miscon-

duct into a shield against parental liability. The divorce
may deprive him of the custody and services of his children,
and of the rights of guardianship, against his will; but if,
by the judgment of the court, and upon competent and
sufficient evidence, he is found to be an unfit person to exer-
cise parental control, while the mother is in all respects the
proper person to be clothed with such authority, he cannot
justly complain." And in 9 *R. C. L.* 296 it is said: "Ac-
cording to the weight and reason of authority and the trend
of the more recent cases, the view prevails that where a di-
vorce is granted at the suit of the wife, and the custody of
the minor children is awarded to her but no provision is made
in the divorce decree for their support, the wife may main-
tain an action against the husband to recover for expenses
incurred by her for their support; but on the ancient and
academic theory that the husband has been deprived by the
decree of the custody, society and services of the child, which
was the foundation of his common law liability for its sup-
port, some authorities hold to a contrary rule, and assert that
there is no liability on the part of the father for his chil-
dren's future support, except as provided for in the divorce
decree or as may be imposed by its modification, either to
the wife or to a third person. Assuming that there is any
force in the argument based upon the common law doctrine
referred to, it has been held that the father by his own wrong
forfeits certain of his common law rights, and that he will not
be permitted to plead such wrong as an excuse for relieving
himself from the obligation to support his children. The
just and more natural reason, however, is that it is not the
policy of the law to deprive children of their rights on ac-
count of the dissensions of their parents, for causes of which
they are innocent, and by proceedings to which they are not
parties. The legal and natural duty of the father to support
his children is not to be evaded by him on the ground of
his own wrongdoing, or even of any dissensions whatsoever
with his wife. A natural father would not think of doing

so, and an unnatural one should not be permitted to do so."
And these views are further supported by a number of cases
which are collected in 19 *C. J.* 354, 355, and in 9 *R. C. L.*
480.

From what has been said it is apparent that the conclusion
we have reached is not affected by the provisions of the New
York statutes to which our attention has been called, even if
we assume those statutes are before us for consideration.
Those statutes only confer upon the court an authority in the
allowance of alimony which it did not exercise in the case
under its consideration, and no sufficient reason has been
suggested why the decree in that case should, in so far as
this case is concerned, have any other effect than would a
decree of a court of this State made under similar circum-
stances. Nor does a consideration of the cases of *Kamp* v.
*Kamp,* 59 N. Y. 212, and *Salomon* v. *Salomon,* 101 App.
Div. 588, 92 N. Y. Supp. 184, affect this conclusion, since
the latter involved only the right of a party to a final decree
for divorce to have it reopened and modified under the au-
thority of the statutes in question, while the former related
to an application for alimony made eighteen years after the
final dissolution of the marriage. In that case, by the decree
of dissolution, the relations between the parties to the suit
were finally and completely terminated, but not so as to their
relation to their children. The decree could not destroy the
relation between parent and child, nor should any decree de-
stroy the obligations incident to that relation, unless the chil-
dren are in some manner represented in the proceeding in
which such decree is entered. *White* v. *White,* 154 N. Y.
App. Div. 250.

This brings us to a consideration of the agreement and its
effect upon the rights of the infant child of the parties to it,
because the question before us is the right of the child to
support during its infancy and not the right of the wife to
alimony. The law in respect to such agreements was very
carefully examined and clearly stated in *Emerson* v. *Emer-*

*son,* 120 Md. 596.   In that case the agreement was made during the pendency of the divorce case, but it was submitted to and approved by the court and its provisions embodied in the decree.   In referring to it this Court said:  "The law has generally regarded all agreements made during the pending of the suit for divorce, as void, as being against public policy.   Too easy is it for the parties to come to such an arrangement on property division as to amount to collusion on the question of the divorce itself.   The practice is common, nevertheless, for courts to incorporate in their decree provisions as to alimony which have been agreed to by the parties.   The court, however, must be satisfied that the agreement is not the result of collusion on the main point of the divorce.   The practice is to submit the agreement to the court, and if the court is satisfied that it is a proper settlement it will receive the sanction of a decree.   2 *Bishop, Marriage and Divorce,* Sec. 702; *Nelson, Marriage and Divorce,* Sec. 915.   Then the validity of the award depends not upon the agreement, but upon the judgment or decree.

"It was said, *Moon* v. *Baum,* 58 Ind. 194:  'It is not competent for the husband and wife to make a valid agreement, as to alimony, during the pendency of the suit for divorce, independent of the sanction of the decree of divorce.'   In *Southworth* v. *Treadwell,* 168 Mass. 511, it was said: 'That the stipulation for alimony to be decreed in the suit for divorce added nothing to the force of the decree, and did not affect the power of the court to change the rights of the parties by further orders or decrees respecting alimony.'   In *Wallace* v. *Wallace,* 74 N. H. 259, the court said: 'It may be conceded that a judgment or decree rendered by agreement cannot be set aside or modified without the consent of the parties, except for fraud, when the agreement does not require judicial sanction to give it validity. * * * This principle does not apply because a decree for alimony rests not upon the agreement, but upon the decision of judicial questions raised by the presentation of the agreement.' "

While such agreements are not in all cases and under all circumstances necessarily void, yet they are usually regarded with suspicion, and while the court may, in making its decree, take them into consideration, it is not bound to do so, nor will any such agreement be permitted to release or relieve either party thereto of any natural or legal obligation owed to the children of the marriage, when it would not be to the interest of or for the welfare of the children to permit that to be done. *Kremelberg* v. *Kremelberg,* 52 Md. 563; 19 C. J. 347, 340, 250; 13 C. J. 463; *Nelson, Divorce and Separation,* par. 975; 15 L. R. A. (N. S.) 746. But in all such cases the court, in determining the validity and effect of such agreements, will treat the welfare of the child as the paramount and controlling consideration, and will not recognize, in so far as the rights of infant children are concerned, the validity of any agreement which is not fair and just and for their welfare and benefit.

Applying these principles to the facts before us, the agreement in question here cannot be sustained as a bar to this action.

It was made during the pendency of a proceeding for divorce brought by the wife against the husband on the ground of adultery. By its recitals it was made for the purpose of settling out of court the very questions upon which the court was asked to rule and its effect was to substitute, for the court's disinterested and impartial judgment, based upon all the material facts and circumstances of the case affecting the welfare of the child, an agreement between the adulterous spouse and the mother, who desired the custody of her child but had not the means to support it. It also bore the marks of collusion because, not only did the husband fail to defend the suit, but he insinuated in a letter to the plaintiff's attorney, written in reply to a demand made by him for assistance in the support of her son, that there was a substantial defense to the divorce proceeding. In that letter he said: "If your client brings the action against me you mention I

shall bring an action in the New York courts for the posses-
sion of my son.  No one knows as well as she does just what
I mean by this.  It might be well for you to remind your
client of the truth about the charge on which she obtained
her divorce, and upon which the contract and possession of
the boy was based."  Certainly the welfare of the child was
likely to receive scant consideration in an agreement entered
into under such circumstances, and an examination of the
agreement demonstrates the soundness of this conclusion.  At
a time when the child was but ten years of age, and the
mother without means of her own, the agreement set apart
for the support of the child property the sale of which yielded
$875.  Manifestly such an amount was inadequate for the
reasonable support and education of the child during its
minority, and in fixing it the parties to the agreement were
not guided by a proper consideration of his welfare.

For these reasons, therefore, in our opinion, the plaintiff
was not estopped, by the decree in the divorce case or the
agreement, from maintaining this action for necessaries es-
sential to the child's welfare, which the mother into whose
custody he had been given was unable to supply.  Nor in
our opinion was the judgment in the Circuit Court for Kent
County a bar to this action.  To support a defence of *res
adjudicata,* it must appear that the right relied on or the
wrong complained of in the case in which that defense is as-
serted was identical with the subject matter of the first suit.
In *Whitehurst* v. *Rogers,* 38 Md. 514, the rule is stated in
the following language:  "The jury are to inquire under the
plea of former recovery, or *'res adjudicata,'* whether the right
asserted, or the wrong complained of, is virtually the same,
or identical, substantially with that involved in the first suit."
And Mr. Poe in his work on *Pleading,* Section 655, in re-
ferring to the same defense, says: "Under it the question at
issue is the virtual identity of the right asserted or the wrong
complained of in the former suit with that mentioned in the
second, and this identity is to be determined not by the plead-

ings only, but when submitted to the jury, by parol proof." The subject matter of the action in Kent County was not identical with the subject matter of this action. Indeed, the two were entirely distinct. The issue in that case was whether certain sums expended for the son of the parties to the action prior to April 5, 1919, were reasonable necessaries essential to his support, while this action is for necessaries furnished the same child after April 5, 1919. It may have been that the jury in the former case did not consider expenditures for which recovery was sought reasonably necessary to the child's support, or that said expenditures had been made at all. A finding therefore that the plaintiff had not furnished necessaries for the child's support prior to April 5, 1919, could not conceivably decide that she had not supplied such necessaries after that date.

The next point we are called upon to consider is whether one of the judges who presided at the trial of the case in Kent County was by reason of that fact disqualified from sitting in this case. Having decided that the issues in the two cases were different, no reason has been suggested why any such disqualification should exist. Without deciding whether the judge would have been disqualified had the subject matter and issues been the same it is sufficient to say that in our opinion he was not disqualified in this case.

What we have said disposes of the rulings on the several demurrers to the pleadings and to the first and fourth exceptions which relate to the supposed disqualification of one of the trial judges and to the rulings on the prayers.

The second exception relates to the court's action in refusing a prayer offered at the conclusion of the plaintiff's case but, as the defendant elected to go on with his case and offered testimony in support thereof, that exception cannot be considered. *Barabasz v. Kabat,* 91 Md. 53.

The third exception relates to the action of the trial court in refusing to permit counsel for defendant in his opening statement to the jury to refer to the record of the case in

Kent County. As that was a collateral matter not relevant to any issue in this case we find no error in this ruling.

The fifth exception was taken to the ruling of the court in refusing to admit certain typewriting on the cover of the agreement referred to above. This writing formed no part of the agreement and was obviously immaterial.

The sixth exception, which is not connected with the other exceptions, relates to the exclusion of certain portions of the record in the Kent County case. Inasmuch as these records appear to have been admitted in evidence, and since this particular bill of exceptions is not connected with any other bill of exceptions in the case, it is not clear why it is submitted for our consideration at all, but it is clear from the record that no injury resulted to the defendant from the ruling of which he complains.

The seventh exception relates to an objection to certain testimony of the plaintiff as to payments made by her for the support of her son before April 6, 1919. As this testimony complemented other testimony in the case and showed the application of the money received by the plaintiff from the father of the child under the agreement above referred to, we find no prejudicial error in the court's ruling in regard to it.

Finding no reversible error in the rulings of the lower court, the judgment in this case will be affirmed.

*Judgment affirmed, with costs to the appellee.*