CHARLES E. PIOTROWSKI *v.* STATE, EX REL.
ANTHONY A. KOWALEK

[No. 24, January Term, 1941.]

*Decided February 19th, 1941.*

The cause was argued before SLOAN, MITCHELL, JOHNSON, DELAPLAINE, and COLLINS, JJ.

*Theodore K. McKeldin* and *M. William Adelson,* with whom were *Sidney M. Jacobs* and *Bernard Rosen* on the brief, for the appellants.

*Louis J. Jira* and *George P. Welzant,* for the appellee.

COLLINS, J., delivered the opinion of the Court.

On the 11th day of July, 1940, Anthony A. Kowalek filed a petition for a writ of habeas corpus in the Court of Common Pleas of Baltimore City, alleging, among other things, that Vivian Joan Kowalek, his daughter, was restrained of her liberty by Charles E. Piotrowski, her grandfather, and Josephine Piotrowski, her grandmother. The writ was granted and after taking testimony in open court, on October 7th, 1940, the custody of the child, Vivian, was ordered taken from the grandparents and given to her father, Anthony A. Kowalek, by the judge below. The appeal is taken from that order.

Anthony Kowalek was married to Wanda Piotrowski, the daughter of the said Charles Piotrowski and Josephine Piotrowski, on October 29th, 1930, and the child, Vivian, whose custody is now in dispute, was born to the said Anthony and Wanda in July, 1932. Three or four weeks before December 4th, 1932, on account of illness, Wanda Kowalek together with her daughter stayed at the home of her father and mother, the Piotrowskis, at 821 North Milton Avenue, but a few days before her death on December 4th, 1932, asked to be taken to her home at 1919 East Lombard Street, where she died. The child, Vivian, continued to live with her grandparents, and has been living with them since she was about four months old. Anthony Kowalek testified that after the funeral of his wife he asked if he could live with the Piotrowskis, but that they refused his request. The father testified that he visited his child once or twice each week for the first two years, and contributed about three or four dollars per week for her support. There is a great deal of dispute as to the amount of contributions he made, and the frequency of his visits. Kowalek was the owner of the house on Milton Avenue where his father-in-law and mother-in-law lived. They paid no rent for the house but did make payments on the Building and Loan mortgage. Finally, in 1933, the Piotrowskis being in arrears in the payments, and in order to save his home, Anthony Kowalek requested the

Piotrowskis to move, and they complied with the request. About eleven months after his first wife's death, Anthony married his second wife, Bertha, and they now have a child five years of age. In 1933, when the Piotrowskis removed from the Milton Street house, Kowalek with his wife and his son moved in that house, where they now reside. The balance owing on the mortgage is about Two Hundred (\$200) Dollars at this time. After his second marriage, apparently the father visited his child less frequently. He testified that at those times he would give small sums of money. It also appears that Bertha, the wife, visited the Piotrowskis' home occasionally, but about the year 1935 trouble arose between the two families, and since that time, Kowalek has contributed very little if anything to his child's support. He states that he has not had the opportunity to see his child very often on account of this trouble. He further says that the reason he has not given more money to the child is because he could not see her. It appears from the record that he does have an insurance policy payable to his child, on which he pays ten cents a week and another insurance policy payable to his wife, Bertha, and child, Vivian. He testifies that at various times since his wife's death he has asked for the custody of his daughter but that this has been refused him. The Piotrowskis deny that he ever asked for the custody of Vivian. The record discloses that both families are of the same religious faith; the Kowaleks, appellee, attending church regularly, while the Piotrowskis, appellants, being members of the church, are not regular in church attendance.

The father, Anthony Kowalek, is forty-five years of age, served in the World War and received an honorable discharge, is a naturalized citizen, and since 1921 has been employed at Edgewood Arsenal where he received, at the time of the appeal, a salary of about Twelve Hundred (\$1200) Dollars a year. He is a well-behaved, industrious man, respected by his neighbors, and is interested in his daughter. His wife, Bertha, is thirty-four

years of age, is well thought of among her neighbors, and wants the custody granted to her husband. The Kowaleks occupy a first-floor apartment in their home, which is kept neatly and in excellent condition. They have made arrangements that if the custody of Vivian is awarded to the father, they will then occupy the whole house. Their five-year-old child appears to be a well behaved boy.

Charles Piotrowski, the maternal grandfather, is fifty-six years of age, a naturalized citizen, is employed by the Park Board of Baltimore City, and earns an average salary of Thirty-six ($36) Dollars a week. He is well thought of by his employer, stays at home, is greatly interested in his family and in his granddaughter Vivian. The family, who occupies his home, which is near the Kowalek home, consists of a son twenty years old, a daughter eighteen years of age, and a daughter seventeen years of age, some of whom are employed. The combined income of the family is about Sixty-three ($63) Dollars a week. The family is very desirous of keeping Vivian. His wife, Josephine, the maternal grandmother, who also occupies the home, is fifty-four years of age, interested in her family and exceptionally fond of her granddaughter Vivian, and has given her granddaughter the care and affection of a mother. The child, Vivian, sleeps in a different bed in the same room with her grandmother, the rest of the family occupying other rooms. The home is clean and in good repair, the bedrooms are well lighted and ventilated. There is some dispute as to whether or not the Piotrowski own their own home, but it appears that they have at least some interest therein.

The child, Vivian, is eight years of age, attends St. Katherine's Church School regularly, and according to her teacher, comes to school spotless and well dressed and appears to have excellent care. The court below, during the testimony, commented that she was a beautiful little child, and unusually well behaved, and that apparently her whole life is in her grandmother. The father is asking the court to remove the child, who, with-

out contradiction, is receiving excellent care and the affection of a mother, to the home of the father, the step-mother, and the half-brother.

Recently the dispute between the two families has become more aggravated and hence the writ of *habeas corpus*.

As stressed by the appellee, the natural right to custody of children is in the father, and there are numerous decisions in this state to sustain that view. *Greenwood v. Greenwood*, 28 Md. 369; *Carter v. Carter*, 156 Md. 500, 144 A. 490. Judge Diggs said in *Barnard v. Godfrey*, 157 Md. 264, 145 A. 614, 616, quoted in *Kartman v. Kartman*, 163 Md. 19, at page 23, 161 A. 269, at page 270: " 'There can be no binding, and very little helpful, precedent found in the decisions of the courts on this subject, because essentially each case must depend upon its peculiar circumstances,' but courts are bound, in determining the fate of children, and in fixing the environment which is thereafter to direct the course of their lives, to recognize the natural right of parents to the custody of their children, and unless convinced that it would be injurious to their welfare, to maintain the relationship which society has always recognized as the one most to be desired. Ordinarily the court or judge who has had the parties before him, has the best opportunity to observe their temper, temperament, and demeanor, and so decide what would be for the child's best interest, and unless there is some sound reason to the contrary his findings ought not to be disturbed. The conclusion at which this court has arrived is at variance with that of the chancellor, and our reasons should therefore be set out." In the case before us, it appears that both families are well behaved, industrious, law abiding people. The paramount question before us is, what will be for the best interests of Vivian Kowalek? This court said in *Carter v. Carter*, 156 Md. 500, at page 505, 144 A. 490, at page 492: "It is the rule of the common law that parents have the natural right to the custody of their children, and that, as between the mother and father, the

primary right to the custody of the children is in the father, since it is his duty to provide for his children's protection, maintenance, and education * * * but this rule must yield to the paramount consideration of what will be the best interest of the children and most conducive to their welfare; and the court will accordingly exercise its sound discretion and award the custody of the children according to the exigencies of the particular case * * * *Boggs v. Boggs,* 138 Md. 422, 438, 439, 114 A. 474. * * * So far as the child's welfare is concerned, the court can find no ground to award his custody to the mother except to gratify her maternal love." Each individual case should be viewed in relation to the happiness, training, development and morals of the infant, and these questions are of paramount importance for the welfare of the infant and renders of subordinate interest the right of custody of the father. *Maddox v. Maddox,* 174 Md. 470, 477, 199 A. 507. The present action was brought under section 21 article 42 of the Code, and we quote from part of that act as follows: "Whenever a minor is brought before a court or judge upon *habeas corpus* in private custody, the court or judge, in the. determination of the case shall be guided and controlled by a parental consideration of what is demanded by the best interest of such minor, and the custody shall be determined without regard to technicalities of procedure and without reference to any alleged technical claim or right of custody; the minor, when brought up by *habeas corpus,* shall be deemed to be in the custody of and subject to the order of the court or judge issuing the writ or hearing the case and the court or judge may adjourn the examination from time to time, and shall not allow the proceedings to be controlled by the parties thereto, or any of them, and it shall not lie within the power of the parties, or any of them, to dismiss the case or settle it; a minor, in such proceeding may be removed from the custody of his parent, appointed guardian, or other legal custodian; he may be committed to the care of any person, body corporate or institution, upon such terms and

for such period as the court or judge may deem beneficial * * *." The case of *Kartman v. Kartman, supra,* is cited to us by the appellee, wherein the custody was taken from an uncle who had raised a boy since babyhood, and given to his father. In that case, however, custody was given in a home in which the boy would be associated with his brother of the whole blood.

In the case now before us, this eight year old girl is unusually well behaved, spotlessly well dressed, attending school regularly, and is receiving the care and affection of a mother from her grandmother, Josephine Piotrowski, and is being supported by the Piotrowski family. We are convinced that it would be injurious to Vivian to remove her from the home where she has lived since infancy. We further believe that the happiness, training, development and morals of the child will be maintained in her present environment. It is doubtful whether her condition would be improved by a change, and it might be very detrimental to her. To satisfy the natural and commendable paternal love of her father would mean her removal from the only home she has ever known. We do not deem it advisable to remove her from this care, affection, and attention. It seems to us that the custody and control of the child should be with the appellants, with the privilege to the father to have the child visit him from time to time, according to their convenience, and as the court may prescribe, if necessary. *Maddox v. Maddox, supra.* For the reasons set forth herein we differ with the decision reached by the learned judge.

*Order reversed, and case remanded for an order in accordance with this opinion; each side to pay half the costs.*