ARTHUR O. STERN *v.* MARTHA F. HORNER, FORMERLY MARTHA F. STERN

[No. 824, September Term, 1973.]

*Decided August 12, 1974.*

The cause was argued before MENCHINE, MOORE and LOWE, JJ.

*Lee Stuart Thomson,* for appellant.

*Richard K. White, Jr.,* with whom were *Constable, Alexander & Baneker* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Divorced in August 1971 by a Nevada decree which incorporated the provisions of an agreement providing for the maintenance and support of three minor children, the appellant-father sued in equity for the reduction and/or elimination of the maintenance and support payments. At the time of suit, the father was a law student residing in Massachusetts and the children were in the custody of the mother at Ocean City, Maryland. Both parents had remarried. The chancellor was persuaded that our decision in *Pumphrey v. Pumphrey,* 11 Md. App. 287, 273 A. 2d 637 (1971) altogether precluded consideration of a *reduction* of support payments for minor children under a written agreement and he dismissed the petition.

On appeal, this disposition is assailed by the father who claims error in the dismissal of his petition and contends also that the chancellor improperly refused (a) to permit the mother, called as a witness for the father, to testify as to her income and property and that of the three children; and (b) to permit the father to testify as to any change in his circumstances subsequent to the execution of the agreement between the parties on February 8, 1971. If no error is found in these respects, the father alternatively contends that Code, Art. 16 (1957, 1973 Repl. Vol.), § 28 upon which the court rested its decision based upon its interpretation of our opinion in *Pumphrey, supra,* is facially unconstitutional as

violative of the equal protection clause of the Fourteenth Amendment.

It is our determination that *Pumphrey* does not compel nor does it justify a conclusion that under no circumstances may a court of equity decrease the amount of maintenance and support of minor children from the amount set forth in a written agreement between the former husband and wife. Accordingly, we reverse and remand for further proceedings.

I

The operative facts, received by stipulation of the parties in open court and by the limited testimony of the appellant-father, are that the parties were married in Baltimore on August 26, 1961 and they had three children, a girl and two boys. At the time of hearing on October 9, 1973 the girl was seven and the two boys four and three, respectively. The parties entered into a separation and property settlement agreement in Maryland on February 8, 1971 and the Nevada decree, entered on August 4, 1971, "confirmed, ratified and approved" it and incorporated its terms. Under the agreement the father undertook to pay $100 per month per child through age 21, terminable by death, marriage or military service; to pay all reasonable and necessary medical, dental and hospitalization expenses as well as the costs of medicines, orthopedic and orthodontic treatment, eyeglasses and corrective shoes; and to contribute to the college educations of the children commensurate with his financial ability and to maintain a policy of insurance on his life for each child in the amount of $15,000.

Appellant testified that at the time of the execution of the agreement in February 1971 he was earning $27,000 per annum as manager of manufacturing in a business enterprise owned by his then father-in-law. At the time of the hearing in October 1973 he was a third year student at Boston College Law School in Boston, Massachusetts. Upon objection by counsel for the mother, he was not permitted to testify as to changed circumstances and impaired financial

condition. The court also refused to permit the mother, when called by counsel for the father, to testify as to her property and income and that of the three children. (As authority for both rulings, the court essentially relied upon the *Pumphrey* case.)

The appellant was, however, permitted to make extensive proffers of testimony, including that, as a result of entering law school, he had income of only $3,000 from a profit sharing trust derived from his former employment, that his employment in the summer of 1972 resulted in earnings of less than $500, that he had received payments under the G.I. Bill and had made national defense student loans; and that if his attendance at law school, where he was in the top 10% of his class and a member of the Law Review, was allowed to continue he had prospective employment with a law firm in Boston at a substantial salary.

With respect to the mother's situation, appellant proffered that she would testify that she and the children had securities and other assets aggregating, on a combined basis, over $400,000 with a combined income in excess of $11,000 annually.

In a memorandum opinion filed with the Order dismissing the petition the chancellor wrote in pertinent part:

> "In this case the father seeks to modify the terms of an agreement incorporated into a decree of this court because his economic position has changed for the worse, and the minor children have assets and income available for the support of the children. *The father proffered clear evidence to this effect, but this court ruled that it is not admissible because it is inconceivable that a reduction or elimination of support payments due from a father for his children could be in the best interests of such children. The Court's ruling was based on Pumphrey v. Pumphrey, 11 Md. App. 287. The Court believes this case to be controlling.*" (Emphasis added.)

## II

Parenthood is a status which survives divorce and is terminable only by death or adoption. The interest of the State in the preservation of the relationship between parent and child and in the protection of the young by courts of equity in Maryland is reflected in several legislative enactments by the General Assembly, in addition to Art. 16, § 28, which are here directly relevant.

First, the General Assembly has ordained that the father and mother are *jointly and severally* charged with the support, care, nurture, welfare and education of a minor child. Code (1957, 1970 Repl. Vol.) Art. 72A, § 1. This section, originally enacted in 1929,[1] now provides that this joint and several obligation extends to children under eighteen years of age. The statute orders equality between the parents with respect to their "powers and duties" and also provides that neither parent has any superior right of custody.[2]

Secondly, the General Assembly has conferred upon courts of equity in Maryland original jurisdiction in "all cases relating to custody, guardianship, maintenance and support of legitimate and illegitimate children," and invested them with statutory authority to impose obligations for the support and maintenance of minors. Code (1957, 1970 Repl. Vol.) Art. 16, § 66. This statute was originally enacted in 1920 as Ch. 573 of the Laws of that year. It contemplates changes in orders or decrees with respect to the support and maintenance of minors. Thus, it specifically provides (§ 66 (a)) that the Court may from time to time "*annul, vary or modify its decree or order in relation to such child or children. . . .*" (Emphasis added.) The Court of Appeals has repeatedly and consistently recognized that

---

1. Acts of 1929, ch. 561, § 1.

2. Ch. 181, Laws of 1974, effective July 1, 1974, amended § 1 of Art. 72A to provide that neither spouse shall be given preference because of sex in a court custody proceeding. The original Act provided that the parents are "equally" charged with the child's "care, nurture, welfare and education." Ch. 678 of Acts of 1951 amended the section by striking out the word "equally" and charging the parents jointly and severally with the "support" as well as the "care, nurture, welfare and education." *See* McKay v. Paulson, 211 Md. 90, 126 A. 2d 296 (1956).

prior to the original enactment of Art. 16, § 66 equity had long had jurisdiction quite apart from divorce proceedings to award the custody of minors and to enter appropriate orders for their support and that the law's provisions are largely declaratory. *Price v. Price,* 232 Md. 379, 194 A. 2d 99 (1963); *Coleman v. Coleman,* 228 Md. 610, 180 A. 2d 875 (1962); *Barnard v. Godfrey,* 157 Md. 264, 145 A. 614 (1929).

The decision in *Barnard v. Godfrey, supra,* Digges, J. writing for the Court, came shortly before the 1931 enactment of Art. 16, § 28, involved in this case. A petition for reduction of child support was filed by a divorced husband under § 80 of Art. 16 which has since become § 66. The parties had, prior to the grant of the divorce, entered into a written agreement under the terms of which custody of the son and daughter was divided — the mother having the daughter and the father having the son. The father was to pay $100 per month for the daughter's support. Later, a supplemental agreement was entered into whereby the children were given to the mother and the father agreed to pay $325 per month. In his petition he sought a reduction from $325 to $100 per month. The chancellor in his decree ordered payment of $200 per month until the children should attain 21 years.

Giving implicit recognition of the authority of the chancellor to reduce the support and maintenance of the children from the agreed $325, the Court of Appeals found the reduced sum of $200 "reasonable and proper in relation to the father's income of at least $12,000 per year."

Earlier in the opinion Judge Digges characterized Art. 16, § 80 as declaratory of the inherent power of courts of equity over minors, a power which should be exercised "with the paramount purpose in view of securing the welfare and promoting the best interest of the children."

Again, as far back as 1841, the General Assembly provided ,that in matrimonial causes wherein a decree of divorce was granted, and where the care and custody of children formed part of the relief prayed, the court may direct who shall have guardianship or custody and who shall be charged with their support and maintenance. Code (1957,

1973 Repl. Vol.) Art. 16, § 25.[3] With respect to changes in such decrees or orders, the identical language of Art. 16, § 66 is employed, namely, that the court may at any time thereafter "annul, vary or modify such order in relation to the children."

Under this statutory provision the power of courts of equity in Maryland to *reduce* the amount of support payable on behalf of minor children was unsuccessfully challenged and the courts' power to reduce support money for minor children explicitly affirmed in *Slacum v. Slacum*, 158 Md. 107, 148 A. 226 (1930). There a divorced father petitioned under former Code, Art. 16, § 39, now § 25, for the reduction of the monthly sum of $30 payable by him under a divorce decree for the support of one child. This was one of the terms of a *contract under seal* entered into after the parties were at issue. In September of 1927 the husband paid the wife $7,000 in cash and granted her an unencumbered fee simple title to their residence in lieu of alimony. In May 1928, however, he was adjudicated a bankrupt and at the time of the hearing in December 1928 his income was less than $100 a month.

The chancellor reduced the child support payment from $30 monthly to $15. On appeal it was contended that the "chancellor had not the power to modify the decree by reducing the amount upon which the parties had previously agreed" and, if such power existed, the circumstances did not justify a reduction. Both contentions were rejected. The court's power was held to reside in then Art. 16, § 39. With reference to the *exercise* of the power of the court to vary the amount allotted to the wife for the support of the minor, the guideline followed was that the power should not be exercised except when clearly indicated by a change in the circumstances, needs and pecuniary condition of the parties.

3. The Court of Appeals has noted that the purpose of the statute as amended by Ch. 574, Acts of 1920, was to allow the court to pass on the question of support and custody where such relief was prayed, whether a divorce was granted or denied and thus avoid the necessity of a separate proceeding. Smith v. Smith, 216 Md. 141, 140 A. 2d 58 (1958).

The Court of Appeals then granted the requested reduction stating (p. 111):

> "It is evident that the faculties of the husband have materially been diminished since the date of the decree by his financial reverses, and that he was entitled to a reduction, since there is no evidence that the losses happened by a lack of good faith in the husband. *The interest of the child does not lie in crippling the father when struggling to restore his earning capacity and fortune, so the rate should be practical.* The court is satisfied that, under the particular circumstances of this case, the chancellor's decree should not be disturbed." (Emphasis added.) [4]

In the perspective of these legislative enactments and the decisions illuminating their provisions, the question now posed is whether the passage in 1931 by the General Assembly of the law specifically dealing with agreements between husband and wife and providing that the terms of such agreements relating to children may be changed by the court, "looking always to the best interests of such infants," has the effect of binding the courts to the *minimum* support provisions of such agreements. We think not.

The language of Art. 16, § 28 is the same now as when it was enacted. It is as follows:

> "§ 28. *Effect of agreement and settlements between parties.*
>
> Any deed or agreement made between husband and wife respecting support, maintenance, property rights, or personal rights, or any settlement made in lieu of

---

4. *See also* Sause v. Sause, 194 Md. 76, 69 A. 2d 811 (1949) where the court declined the husband's request for a reduction in child support based upon poor health and diminished earning capacity but added that "[i]f appellant does not improve and cannot command an increase in wages, the chancellor can modify the order," giving as authority Code (1939) Art. 16, § 41, now § 25, and paraphrasing Slacum, *supra,* to the effect that "the best interests of the child are not served by overwhelming the father when he is struggling to restore his health and his earning capacity."

support, maintenance, property rights or personal rights shall be valid, binding and enforceable to every intent and purpose and such deed or agreement shall not be a bar to an action for divorce, either a vinculo matrimonii or a mensa et thoro, as the case may be, whether the cause for divorce existed at the time or arose prior or subsequent to the time of the execution of said deed or agreement, or whether at the time of making such deed or agreement the parties were living together or apart; *provided, that whenever any such deed or agreement shall make provision for or in any manner affect the care, custody, education or maintenance of any infant child or children of the parties the court shall have the right to modify such deed or agreement in respect to such infants as to the court may seem proper, looking always to the best interests of such infants.*" (Emphasis added.)

The common law disability of husband and wife to contract with each other was abolished in Maryland in 1900. Code (1957, 1973 Repl. Vol.) Art. 45, § 20. When separation and property settlement agreements between husband and wife were entered into during the pendency of a divorce the Court of Appeals in 1921 said (p. 438):

"While such agreements are not in all cases and under all circumstances necessarily void, yet these are usually regarded with suspicion. . . ." *Boggs v. Boggs*, 138 Md. 422, 438, 114 A. 474 (1921).

The Court in *Boggs* also observed with respect to provisions of such agreements governing custody and support of minor children:

"But in all such cases the court, in determining the validity and effect of such agreements, will treat the welfare of the child as the paramount and controlling consideration, and will not recognize,

in so far as the rights of infant children are concerned, the validity of any agreement which is not fair and just and for their welfare and benefit." *Idem*.[5]

*See also Melson v. Melson,* 151 Md. 196, 134 A. 136 (1926). In a case frequently cited, decided by the Court in 1930, the Court stated that parents "cannot by agreement between themselves fix the amount necessary for the support and maintenance of their minor children, so as to bind the courts." *Kriedo v. Kriedo.* 159 Md. 229, 150 A. 720. That the equity court was at liberty to accept or reject the provisions of agreements relating to support of children was underscored in the following language of Judge Digges writing for the Court in *Kriedo*:

"The court may adopt the amount agreed upon and incorporate it in the decree, but it has the power to change or modify the decree in this respect, when it shall be made satisfactorily apparent that new or changed conditions or circumstances make a modification necessary. *Alvey v. Hartwig,* 106 Md. 254; *Boggs v. Boggs,* 138 Md. 422; *Melson v. Melson,* 151 Md. 196; Code, art. 16, sec. 39; *Hood v. Hood,* 138 Md. 366."

Referring to Art. 16, § 28 in *Shacter v. Shacter,* 251 Md. 304, 247 A. 2d 268 (1968) Chief Judge Hammond described it as giving a "statutory presumptive validity" to separation agreements between husband and wife, and in the leading case of *Zouck v. Zouck,* 204 Md. 285, 104 A. 2d 573 (1954) in which the issue was raised *inter alia* whether a spendthrift trust could be charged in order to give effect to an agreement with respect to the support of a minor child, then Associate Judge Hammond wrote (p. 300):

"Any provision of an agreement for the child may be disregarded by a court, which can *increase or*

---

5. Of course, by the provisions of Art. 16, § 28 separation and property settlement agreements are "valid, binding and enforceable to every intent and purpose."

*decrease* an allowance for support." (Emphasis added.) [6]

The Court cited Code (1951) Art. 16, § 37, which is now Art. 16, § 28. It also relied upon *Boggs, supra* and *Melson, supra.*

More recent references by the Court of Appeals to the provisions of Art. 16, § 28 have recognized the authority of the equity court to modify such agreements, without restricting such modifications to increases only — as urged upon us by appellee in this case. Thus in *Heinmuller v. Heinmuller,* 257 Md. 672, 264 A. 2d 847 (1970), Judge Digges stated:

> "Provisions regarding care and maintenance of children, of course, may always be modified by the court, if modification is in the best interests of the child. Code (1957, 1966 Repl. Vol.) Article 16, Section 28; *Price v. Price,* [supra]."

When such an agreement is incorporated in a decree of divorce, as Maryland Rule S77 specifically authorizes, it is manifest that the action of the chancellor should be more than a mere adoption of what the parties have agreed. In *Langville v. Langville,* 191 Md. 103, 60 A. 2d 206 (1948), the Court clearly stated that the decree constituted an "independent action" of the chancellor — "not merely confirmatory of the agreement," citing *Slacum* and *Kriedo, supra.* In addition, referring to the provisions of Art. 16, § 28 (then § 42) the Court stated:

> "Nor could the agreement bind or limit the Court's decision with respect to the best interests of the child."

The principal effect of the statutory law concerning custody and support was simply and clearly elucidated by Judge Hammond (retired Chief Judge) in *Price v. Price, supra,* when he observed (p. 384) that Art. 16, § 66 gives

---

6. Judge Hammond also observed in Zouck that the obligation of parents for support of a child is joint and several but that the father to the extent of having agreed to support the child had "exonerated" the mother from her obligation.

equity original jurisdiction in cases of custody or guardianship and the power to direct who shall be charged with support and maintenance; that "[s]ec. 28 provides that agreements between parents shall not divest the court of this power, and sec. 25 directs its exercise when appropriate in divorce cases."

We deem it abundantly clear from the aforegoing that the court below misapplied the decision of this Court in *Pumphrey v. Pumphrey.* There, the parties had entered into a written agreement for the support of three minor male children, including their college education. The 19 year old son of the parties married while still in college and the father petitioned for modification of the divorce decree by elimination of the monthly payment of $250 for that son's support and maintenance. The only contention of the father was that by reason of his marriage, the son was emancipated and the payment for support and maintenance was no longer required under the decree. This Court in an opinion by Chief Judge Murphy held that such agreements are subject to the same rules of interpretation as other contracts and that while the son's marriage may have emancipated him from parental control, it did not render him "self-supporting" within the ordinary sense of that term as used in paragraph two of the agreement. Chief Judge Murphy also stated (11 Md. App. at 292):

> "Where the best interests of the child do not require modification of a separation agreement incorporated into a decree the court is without power to modify it by eliminating or reducing the agreed payment for the minor's support. While the Chancellor erroneously interpreted the agreement, and did not address himself to the question whether, under Section 28 the best interests of the emancipated child required modification of the decree, we do not think it likely that Robert's welfare would be enhanced by removing his source of support while he was in college and remained unemployed."

The above decision and the language above quoted is not at variance with the statutory provisions which we have reviewed and the decisions of the Court of Appeals under common law and under the statutes relating to the effect of agreements and settlements between husband and wife. Each case must, of course, be determined upon its particular facts. In *Pumphrey* no facts were shown nor proffered with respect to any change in circumstances or in the financial condition of the parties that would justify consideration of the requested reduction. We make no statement here as to the merits of the appellant's claim based upon such evidence as was received nor, of course, upon the evidence proffered in the court below. We do hold, however, that the mere fact that appellant requested a reduction did not preclude him from a consideration of his petition on the merits. Neither Art. 16, § 28 nor the decision of the Court in *Pumphrey* compels that result. It is unnecessary, of course, to consider the alternative constitutional question raised.

> *Judgment reversed; case remanded for further proceedings; appellee to pay the costs.*