NETTIE R. BURKE ET AL. *v.* HENRY BURKE

BROWN, C. J., JENNINGS, BALDWIN, O'SULLIVAN and MURPHY, Js.

Argued May 4—decided July 3, 1950

*Charles G. Albom,* with whom, on the brief, was *Nelson Harris,* for the appellant (defendant).

*I. Gordon Colby, Jr.,* for the appellees (plaintiffs).

BROWN, C. J.   The plaintiffs are Nettie R. Burke, individually, and Barbara and Eileen Burke, the minor children of herself and the defendant, suing by her as natural guardian and next friend.   The action is for reimbursement of expenditures made by Mrs. Burke for the support of herself and the children, and for future support.   The court rendered judgment that Mrs. Burke recover $7112.25 damages of the defendant and that he pay her from August 1, 1949, until further order of the court $250 per month for the support of herself and the children.   The defendant has appealed.

We summarize the material facts set forth in the finding, which is not subject to correction.   Nettie Burke, referred to hereinafter as the plaintiff, and the defendant were married in Lawrence, Massachusetts, on July 14, 1934.   The two minor children are the issue of the marriage, Barbara, born March 23, 1935, and Eileen, born August 24, 1936.   From their marriage until early September, 1938, the couple lived in Eliz-

abeth, New Jersey. Because of lack of employment, the defendant then took his wife and children to Somerville, Massachusetts, where he left them with his wife's aunt and returned to Elizabeth. He has not set up a home for the plaintiff since then, nor offered to do so, and has not lived with her since sometime prior to November, 1939. In that month he wrote that he no longer wanted to live with her, that he was going to St. Louis and that he wished that she would get a divorce. In 1940 he started a divorce action in St. Louis but withdrew it when the plaintiff entered an appearance to contest it. On December 20, 1940, upon her petition for a separation, the Probate Court in Massachusetts entered judgment finding that the "petitioner for justifiable cause is actually living apart from her said husband" and decreed that she have the care and custody of their two minor children until further order of court, but there was no order for support.

The plaintiff at no time after the defendant left her requested him to resume marital relations with her, nor has he ever asked her to live with him again. From the time of the defendant's removal to St. Louis in 1940 until June, 1946, the defendant neither visited the plaintiff or their children nor requested them to come to see him. The defendant is now a resident of Connecticut. During the period 1940 through 1948, his annual income steadily increased from $220 to $7350, and from January 1, 1949, to May 21, 1949, just prior to the trial, his income totaled $3450. From April, 1947, through February, 1949, his gross salary was $600 per month plus $150 extra in December of 1947 and 1948, and at the time of trial his pay was $125 per week. His contribution for the support of the plaintiffs from 1940 to the time of the trial varied from $101 to $1800 per year. The plaintiff's annual earnings for the same period varied from nothing in 1940 and 1941

to a maximum of $1860 in 1948. In 1949, she was earning $165 per month.

On November 6, 1946, the plaintiff and defendant, together with a trustee, executed an agreement whereby the defendant waived all claim to the plaintiff's property and agreed to pay her $150 per month for the support of their minor children. It provided that "said monthly payment may be revised at any time depending upon the financial position of the said Henry Burke, but it is the intent of this agreement that such payment shall always represent approximately three-eighths (⅜ths) of his net income." The duration of the agreement was not specified. From its execution until the time of trial, the defendant substantially complied with its terms. His capital assets are negligible. A few hundred dollars which the plaintiff inherited some years ago has practically all been spent for support. Barbara is in high school and Eileen has just graduated from grammar school. Further facts material to the amount expended by the plaintiff for support are referred to below.

The gist of the court's essential conclusions is: (1) The separation of the family has been without fault by the plaintiffs. (2) In violation of his continuing duty to support the plaintiffs reasonably, the defendant failed to furnish such support from January 1, 1942, to December 1, 1946. (3) The plaintiff is entitled under § 7308 of the General Statutes to recover $6525, the amount she expended during that period for reasonable necessaries for herself and the children under a standard of living in accord with the defendant's resources, plus $587.25 interest accrued since the institution of this action, a total of $7112.25. (4) The purported agreement of November 6, 1946, is not enforceable. (5) It did not provide for the plaintiff's support, and her execution of it did not waive or release her claim

to reimbursement for the expenditures above stated. (6) Its execution did estop her from recovering for expenditures of the same nature so long as the defendant complied with its terms, until the institution of this action on March 2, 1948, gave notice of her repudiation of it. (7) A reasonable amount for the defendant to contribute for the plaintiffs' support under his duty to provide them with reasonable support for the future is $250 per month.

Three of the four contentions relied upon by the defendant in his brief which call for consideration relate to the judgment for money damages for expenditures made by the plaintiff prior to the institution of this action. One of these attacks the court's finding that the plaintiff expended $9687.96 for necessaries from 1942 until December 1, 1946, when the agreement became operative. The defendant's claim is that the evidence did not "support a finding that she had laid out and expended money in any amount so as to support a money judgment." The court's findings showing the annual totals earned by the plaintiff and the annual amounts contributed to her by the defendant during this period are not attacked. These facts, in connection with the plaintiff's testimony, unassailed on cross-examination, as to the nature of her expenditures, that she was not "able to save anything" and that the bank account of the few hundred dollars which she had inherited was "dwindling very fast" fully warrant the court's finding. The court further found what would constitute, in each year, a reasonable contribution for support by the defendant on the basis of the income he received; it also found the net balance due after crediting him with the payments he had made during the year. Since the total of these net balances plus his payments during the period in question was substantially the same as the total of the plaintiff's earnings

plus the total of the amounts paid to her by the defendant, his second contention, that the court erred in adopting as the measure of damages "the difference in amount between what the trier believes the defendant should have paid and what he did pay," is without merit. This is so because the final result reached by the court was correct as above stated, regardless of the formula it adopted in making its computation. The defendant's further contention that the negotiation of the agreement by the plaintiff and the defendant's performance thereunder worked a waiver by her of her claims for past support finds full answer in the agreement itself, which neither releases nor so much as mentions any claim of the plaintiff against the defendant. In ruling upon the question of the defendant's liability for money expended by the plaintiff for the support of herself and the children, we assume, as have counsel for the parties, both before us and in the trial court, that the law of Massachusetts and Missouri, in so far as applicable and relevant, is the same as that of Connecticut.

The final contention of the defendant relates to the $250 monthly payments which the judgment provides that he shall make to the plaintiff commencing August 1, 1949, and continuing until further order of court. The claim is that his compliance with the agreement of November 6, 1946, constitutes a defense to any order for such payments. In so far as the plaintiff herself is concerned, this patently is not so, for the agreement contains no provision for her support. The defendant received from the court all of the consideration to which he was entitled when it held the plaintiff estopped from making any claim for support for the children while she was receiving such support under the agreement. Neither does the agreement afford a defense against the right of action by the two plaintiff children.

This is because no such contract by a father can restrict or preclude the power of the court to decree what he shall pay for the support of a dependent minor child. A husband and wife cannot make a contract with each other regarding the maintenance or custody of their child which the court is compelled to enforce, nor can the husband relieve himself of his primary liability to maintain his child by entering into a contract with someone else to do so. The welfare of the child is the primary consideration. The court "may recognize the contract, but such contract will not be enforced longer than it appears to be for the best interests of the child, and parents entering into such a contract are presumed to do so in contemplation of their obligations under the law and the rights of the child." *Edleson* v. *Edleson*, 179 Ky. 300, 313, 200 S. W. 625; *Rennie* v. *Rennie*, 85 N. J. Eq. 1, 2, 95 A. 571; *Boggs* v. *Boggs*, 138 Md. 422, 436, 114 A. 474; *Brice* v. *Brice*, 50 Mont. 388, 394, 147 P. 164; *Lewis* v. *Lewis*, 174 Cal. 336, 341, 163 P. 42; 39 Am. Jur. 652, § 42; 46 C. J. 1260; see *Shields* v. *O'Reilly*, 68 Conn. 256, 262, 36 A. 49; *Welch's Appeal*, 43 Conn. 342, 350; note, 15 A. L. R. 569. The detailed finding shows that there had been a very material increase in the defendant's income between the execution of the agreement on November 6, 1946, and the time of trial in May, 1949. Since the agreement could not affect the court's power to order the defendant to furnish support in an amount which it found equitable and proper under all of the circumstances, including the best interests of the two minor plaintiffs, its provisions afford the defendant no reason to complain of the order for future payments.

The following expressions by courts dealing with contracts of this nature serve to emphasize the justice of this conclusion. "The right of the children to support is a direct right vesting in them. It does not come

through their mother, and their rights are not affected by any contract the mother may make." *Singleton* v. *Singleton,* 217 Ky. 38, 39, 288 S. W. 1029. The effect of such a contract "as to limitation of liability ends with the person whose consent gave it validity. The agreement itself is binding only upon those whose volition and execution gave it birth. In no wise can it diminish the liability of the parent to infant children who were not and could not become parties thereto. By contracting with his wife he was unable to discharge his own obligation to his child." *Von Roeder* v. *Miller,* 117 Misc. 106, 108, 190 N. Y. S. 787. "Certainly the husband is bound to support his infant child and cannot contract against such liability; public policy will not permit it." *Hayden* v. *Hayden,* 215 Ky. 299, 301, 284 S. W. 1073.

There is no error.

In this opinion the other judges concurred.