[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION REGARDING DEFENDANT'S MOTION TO MODIFY SUPPORT
The defendant has filed a motion dated June 9, 1992, coded #130, to modify the existing support order.
Many of the facts that give rise to this motion are not in dispute between the parties.
The marriage of the parties was dissolved by the court on July 17, 1978. The defendant wife was awarded custody of the minor child of the parties, Amy Susanne Borgerson, born December 18, 1987, and the plaintiff husband was ordered to pay $120.00 per week unallocated alimony and support for a period of two years and thereafter $75.00 per week beginning July 23, 1980. Between July 17, 1978 and June of 1990, the plaintiff husband had not attempted to exercise visitation rights with the child and had not made any support payments. On June 12, 1990, as a result of a motion for contempt dated May 23, 1990, coded #129, filed by the defendant, the parties appeared in court and entered into an agreement. The transcript of that agreement is as follows:
 MR. KENT: I'm Attorney Richard Kent, Your Honor, of Cohen and Wolfe in Bridgeport and I represent the plaintiff CT Page 8347 Roger N. Borgerson. It's a contempt citation brought on by the defendant.
 MS. OSIS: Attorney Daiga Osis. I represent the former Mrs. Borgerson.
THE COURT: Alright.
 MS. OSIS: Your Honor, we have reached an agreement in this case. This is a Motion for Contempt. We've established an arrearage of $50,000.00 currently in the support. We've also agreed that since Mrs. Borgerson resides in the State of Arizona, that there will be a future child support payment of $10,000.00 which will carry the child support through July 1, 1992. The entire sum will be paid in two lump sums.
THE COURT: A total of $60,000.
MS. OSIS: The whole $60,000.
 The first $35,000.00 will be paid by July 1 of this year and the remaining $25,000.00 will be paid by July 1, 1991.
 There is also an understanding, Your Honor, subject to the approval, of course, of the State of Arizona, that the former Mrs. Borgerson will seek a termination of parental rights in Arizona and Mr. Borgerson has agreed to that. . . .
 THE COURT: Mrs. Borgerson, any questions at all?
MRS. BORGERSON: No, Your Honor.
 THE COURT: Mr. Borgerson, any questions, sir?
MR. BORGERSON: No, sir.
 THE COURT: Alright. The agreement is approved. An order may enter accordingly. As far as the future CT Page 8348 possibility of termination of parental rights in Arizona, this Court takes no position on that. No orders are entering in that regard. Whatever happens, happens.
 MR. KENT: May I canvass my client on that issue, Your Honor?
THE COURT: Of course.
 MR. KENT: Mr. Borgerson, do you understand that a proceeding will be filed in Arizona with respect to the termination of parental rights of your daughter?
MR. BORGERSON: Yes, sir, I do.
 MR. KENT: And you're entering into this agreement fairly and reasonably — without any questions and of your free will?
MR. BORGERSON: Yes, I am.
 THE COURT: Let me add, I express no opinion as to what the position of this Court would be in the future should there be a termination in Arizona and should there be any proceeding here. And don't take that as meaning anything one way or the other. It's just that I'm not going to be bound at this point by anything in the future.
 MR. BORGERSON: I understand, Your Honor.
 MR. KENT: And may I inquire of Mrs. Borgerson?
THE COURT: Sure.
 MR. KENT: Mrs. Borgerson, you'll do everything possible to effectuate the termination of parental rights in Arizona?
MRS. BORGERSON: Yes, I will. CT Page 8349
 MR. KENT: Sign any documents and the like?
MRS. BORGERSON: Yes, I will.
 MR. KENT: Nothing further, Your Honor.
 THE COURT: Very good. The orders may enter.
MS. OSIS: Thank you, Your Honor.
 MR. BORGERSON: Thank you, Your Honor.
(emphasis provided)
The parties also signed a written agreement on June 14, 199 the provided in Article 1 as follows:
ARTICLE 1: TERMINATION OF PARENTAL RIGHTS
 That the Wife will file on or before July 1, 1990 a termination of parental rights proceeding in Arizona to terminate the rights of the Husband in minor child AMY. Both Husband and Wife shall fully cooperate in that proceeding. All costs involved in that proceeding shall be borne by the Wife.
Between 1980 and 1985, the defendant resided with the minor child in Trumbull and Bridgeport, Connecticut. The defendant resided in Westport, Connecticut, with the minor child between 1985 and 1988. In 1988 the defendant moved to Arizona with the minor child. The defendant has remarried since the divorce from the plaintiff and that marriage has also resulted in a divorce in 1988. Between the date of the divorce between the plaintiff and defendant, and the date the defendant moved to Arizona, the plaintiff never attempted to exercise visitation rights. The plaintiff claims that his failure to exercise visitation rights was as a result of having been threatened by the defendant's brother with a weapon in 1988. The court finds that the plaintiff has failed to prove that allegation. The plaintiff did pay to the defendant the $60,000.00 that he agreed to pay at the June 12, 1990 hearing, in accordance with the terms of that agreement. The defendant did not take any steps towards the termination of the plaintiff's parental rights, although she had CT Page 8350 agreed to do so at the June 12, 1990 hearing. Under the terms of the divorce between the parties of July 17, 1978, the total amount of support due from the plaintiff to the defendant for the period of July 17, 1978 to June 14, 1990, would be $51,030.00, calculated at the rate of $120.00 per week for the 104 week period from July 17, 1978 to July 23, 1980, totaling $12,480.00 plus $75.00 per week for the 514 weeks from the period of July 23, 1980 to June 12, 1990, totalling $38,550.00. The agreement between the parties on June 12, 1990 was for the plaintiff to pay support through July 1, 1992, which at the rate of $75.00 per week for the approximate 107 weeks from June 12, 1990 to July 1, 1992, totals $8,025.00, which when added to the $51,030.00 amounts to a combined total of $59,055.00. The defendant wife took no steps towards the termination of the plaintiff's parental rights in the minor child Amy, although she agreed to do so in open court.
The plaintiff raises two claims regarding the defendant's motion to modify support as follows: 1) To what extent may equitable estoppel affect a child support obligation, and 2) should this court find that the doctrine of equitable estoppel does not apply, then the child support guidelines of Arizona should apply in this case, rather than Connecticut.
The plaintiff relies principally on Bozzi v. Bozzi,17 Conn. 232, 241, 413 A.2d 834 (1979), and Papcun v. Papcun,18 Conn. 618, 621, 436 A.2d 282 (1980), in arguing in part as follows:
 Plaintiff's former wife admitted that she entered into the termination agreement intending to induce plaintiff to believe he was ending his obligations. Plaintiff, relying on the inducement, gave his former wife the money, which he otherwise would not have done. This act operated to his injury and prejudice through the lost use and benefits of the funds, the harmful and compromising effects in negotiations and legal positions concerning past and future payments and in the loss of opportunity to exercise his parental rights. Therefore, since the Connecticut Supreme Court recognized the availability of an equitable estoppel defense in child support cases in Bozzi, supra, and Papcun, supra, and plaintiff's situation satisfies the requirement for the defense, the court CT Page 8351 should find estoppel operates to some extent to defend against his former wife's claims.
 However, the question remains as to precisely what extent such a defense will work to defeat the specific claims presented here. Courts, even when applying equitable estoppel to some aspects of a child support dispute, sometimes will not allow the estoppel to release the payor parent from all future child obligations. . . .
In discussing the doctrine of equitable estoppel, the Bozzi court stated in part as follows, on pages 241-242:
 Much of our discussion in the previous section is germane to the defendant's final contention that the court erred in failing to conclude that the plaintiff was equitably estopped from asserting her claim for past and future support for the two children.
 "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse." 3 Pomeroy, Equity Jurisprudence (5th Ed. 1941) 804, p. 189; 28 Am.Jur.2d, Estoppel and Waiver 76; accord, Spear-Neuman, Inc. v. Modern Floors Corporation, 149 Conn. 88, 91, 175 A.2d 565 (1961); Tradesmens National Bank of New Haven v. Minor, 122 Conn. 419, 424, 190 A. 270 (1937), MacKay v. Aetna Life Ins. Co., 118 Conn. 538, 548, 173 A. 783
(1934). Its two essential elements are that one party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act on that belief, and that the other party, influenced thereby, must change his CT Page 8352 position or do some act to his injury which he otherwise would not have done. Dickau v. Glastonbury, 156 Conn. 437, 441, 242 A.2d 777 (1968); Pet Car Products, Inc. v. Barnett, 150 Conn. 42, 53, 184 A.2d 797 (1962), see Bealle v. Nyden's, Inc., 245 F. Sup. 86, 93-94 (D.Conn. 1965); 28 Am.Jur.2d, Estoppel and Waiver 27, p. 627.
In Guille v. Guille, 196 Conn. 260 (1985), the issue involved was whether a stipulation entered into between a husband and wife that precluded modification of a support order, which stipulation was approved by the court in a divorce decree, precluded modification of the support order. The Guille court stated in part as follows:
 Although child support orders rendered pursuant to General Statutes 46b-56 are made and enforced "as incidents to divorce decrees"; Kennedy v. Kennedy, 177 Conn. 47, 50, 411 A.2d 25 (1979), the minor children's right to parental support has an independent character, separate and apart from the terms of the support obligations as set out in the judgment of dissolution. "A divorce decree for support of children by the father does not affect the rights of the children as against the father, since such a decree relates merely to the relative rights and duties of the parents toward each other." 2 Nelson, Divorce and Annulment (2d Ed. 1961) 1498. The independent nature of a child's right to parental support was recognized by this court long before that right was codified in our statutes. In Burke v. Burke, 137 Conn. 74, 79, 75 A.2d 42 (1950), we hold that an agreement concerning child support executed between a separating husband and wife did not afford a defense against the right of action by the couple's two minor children against their father for additional support. "[N]o such contract by a father can restrict or preclude the power of the court to decree what he shall pay for the support of a dependent minor child. CT Page 8353 A husband and wife cannot make a contract with each other regarding the maintenance or custody of their child which the court is compelled to enforce, nor can the husband relieve himself of his primary liability to maintain his child by entering into a contract with someone else to do so. The welfare of the child is the primary consideration. The court `may recognize the contract, but such contract will not be enforced longer than it appears to be for the best interests of the child, and parents entering into such a contract are presumed to do so in contemplation of their obligations under the law and the rights of the child.'" (Citations omitted.) Id., 80; see Nelson, supra, 14.77 and 15.58.
 We conclude that neither the general language of General Statutes 46b-86(a), permitting the court to modify support "[u]nless and to the extent that the decree precludes modification," nor the decree's broadly phrased nonmodifiability provision, was effective to restrict permanently the court's power to modify the terms of child support under the circumstances of this case.
(emphasis provided)
Based on Guille, this court holds that the agreement entered into between the parties on June 14, 1990, cannot compel the court to enforce that agreement. The agreement does not appear to be in the best interest of the minor child to prohibit future support orders.
The plaintiff further argues that in the event the doctrine of equitable estoppel does not apply, then the child support guidelines of Arizona, rather than Connecticut, should apply in this case. The court is not persuaded by that argument. Under the Arizona support guidelines the amount of weekly support would be $118.00. Under the Connecticut support guidelines the amount of weekly support would be $175.00. The defendant mother and the child presently reside in Arizona and the plaintiff father presently resides in Connecticut. This court agrees with the rationale of the court, Bassick, J., in Sullivan v. Sullivan Docket 326839 Superior Court, Judicial District of New Haven CT Page 8354 where the court held in part as follows:
 . . . The children and their mother reside in Connecticut. Section 46b-215b(a) of the General Statutes provides in pertinent part that the guidelines "shall be considered in all determinations of child support awards within the state." (emphasis supplied). The guidelines themselves provide in subparagraph (a) General Principles, (1), pg. 8 the guidelines "shall be considered in all determinations of child support amounts within the state". (emphasis supplied) The court rules that the Connecticut Guidelines shall apply in this situation.
The remaining issue before the court is whether there is any reason to deviate from the Connecticut support guideline amount of $175.00 per week. The amount that was due to the defendant from the plaintiff at the June 14, 1990 hearing was $51,030.00. The plaintiff agreed to pay a total of $60,000.00 which was to include support through July 1, 1992 on the defendant's representation that she would file on or before July 1, 1990 a termination of parental rights proceeding in Arizona to terminate the rights of the plaintiff in the minor child. The defendant has never filed such a termination of parental rights proceeding. When the plaintiff agreed to pay the $60,000.00 at the June 14, 1990 hearing, he gave up whatever defenses of waiver, laches, or equitable estoppel that he may have had to the $51,030.00 due to the defendant as of June 14, 1990. The defendant fraudulently represented to the plaintiff and to the court that she would file a termination of parental rights proceeding in Arizona. The issue before the court is not whether contracting to file a termination of parental rights proceeding in exchange for the payment of back support and future support is an enforceable contract. Rather, the issue before the court is whether when a person fraudulently enters into such a contract and makes such a fraudulent representation to the court, whether such fraud should result in the court deviating from the support guidelines. The deviation criteria under the support guidelines includes "other equitable factors". This court does not know of any decisions that have applied that deviation criteria in Connecticut. This court does hold that where a defendant fraudulently enters into an agreement under which the plaintiff gives up defenses to the enforcement of a support order and pays past and future support and where a defendant makes fraudulent statements to the court that it would be inequitable and inappropriate to apply the guidelines in such a particular case. This court, therefore CT Page 8355 finds that deviation criteria "other equitable factors" does apply to this case.
In determining that the deviation criteria of "other equitable factors" applies to this case, this court has also taken into consideration the case of Lacroix v. Lacroix,189 Conn. 685, 689 (1983), where the court stated in part as follows:
 . . . "Although created by statute, a dissolution action is essentially equitable in nature. Pasquariello v. Pasquariello, 168 Conn. 579, 583, 362 A.2d 835 (1975). "The power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage.' Id., 585." Robinson v. Robinson, 187 Conn. 70, 71-72, 444 A.2d 234 (1982).
 As previously noted, in his pleadings the plaintiff made a claim for "[s]uch other relief as to equity may appertain." The court determined that the equitable relief necessary to the decree of dissolution included an alimony award. The plaintiff seeks equity only for himself, but this he may not do. One who seeks equity must also do equity and expect that equity will be done for all. See Sturgis v. Champneys, Conn. General Statutes Myl. Cr. 97, 105, 41 E.R. 308 (1839); 1 Pomeroy, Equity Jurisprudence 419, 385 et seq. (1981).
Accordingly, the plaintiff is ordered to pay to the defendant support in the amount of $100.00 per week effective September 24, 1992.
Sidney Axelrod, Judge CT Page 8356