[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties appear on a Motion for Modification of Judgment. The motion was filed by the State, on the mother's behalf, on August 31, 1995.
By way of procedural background, this case was instituted by the plaintiff as a paternity petition, alleging that the defendant was the father of her child, born on March 29, 1988. The defendant appeared with counsel and the matter was claimed for a jury trial. Prior to trial, the parties entered into a written stipulation on May 21, 1991, and further executed an amendment to the stipulation, both of which were approved and found to be in the best interests of the minor child by the court, Langenbach, J., and judgment entered accordingly. At the time that judgment entered, both parties were represented by counsel; however, no counsel was appointed for the minor child.
The State's Motion to Modify, filed August 31, 1995, was first before the court on September 28, 1995, where, Sosnoff, FSM, appointed Attorney Michael Conway to represent the interests of the minor child, Tanja Marie Lanzetta.
On January 25, 1996, the defendant, through counsel, filed a Motion to Strike the Plaintiffs Motion for Modification. (The motion for modification was actually filed by the State). The court, Sosnoff, FSM, denied the defendant's Motion to Strike on February 29, 1996 and the defendant appealed. On July 25, 1996, the court, Shortall, J., affirmed the decision of the Family Support Magistrate. On August 14, 1996, the defendant further appealed that decision to the Appellate Court. The Appellate Court dismissed the appeal on December 4, 1996 for lack of a final judgment.
The Motion for Modification was returned to the Family Support Magistrate's docket on March 6, 1997. The matter was thereafter continued numerous times at the request of counsel and heard finally on January 28 and 31, 2000. On January 26, 1995, the court, Forman, FSM, ordered that any orders entered on the motion be retroactive to November 30, 1995. CT Page 2499
The Motion was filed by the Assistant Attorney General on behalf of the State and the plaintiff, alleging that the caretaker and the minor child of the parties are the recipients of assistance from the State of Connecticut under Aid to Families with Dependant Children program in the amount of $473.00 per month. The Motion sought relief that the defendant be ordered to pay an amount of support of said child commensurate with his ability to pay such support. However, at the time the motion was heard in January, 2000, the Assistant Attorney General informed the court that the mother was no longer receiving state assistance and any monies paid by the state to the family had been reimbursed. The State, therefore, had no interest in pursuing its motion.
However, the plaintiff had since retained counsel, who, along with counsel for the minor child, both claimed the relief sought in the State's Motion for Modification.
 I.
The court finds the following facts based on the reliable and credible testimony. On May 21, 1991, judgment entered whereby the defendant, David Lanzetta acknowledged and admitted paternity for the child Tanja Marie Lanzetta. The relevant sections of the court approved Stipulation, dated May 21, 1991, provide as follows:
 "3. The plaintiff, MARIA MCDOUGALL, individually, and on behalf of her child, TANJA MARIE, and the defendant, DAVID LANZETTA, do, hereby agree and stipulate as follows:
 a. This agreement shall be subject to the approval of the court and upon such approval, appropriate orders shall enter in accordance herewith. In addition thereto and independent therefrom, this agreement shall constitute a binding contract and agreement between and among the parties and shall independently survive any court orders and court action and be separately and independently enforceable by the parties as a contract agreement; . . .
 c. The Defendant, DAVID LANZETTA, agrees to pay the sum of Twenty-Seven Thousand Five Hundred Dollars ($27,500.00) lump sum in full and complete satisfaction of all claiming (sic) and liabilities arising out of this action and/or the birth and CT Page 2500 paternity of said minor child, . . .
 d. The Plaintiff shall place the said sum of Twenty-Seven Thousand Five Hundred ($27,500.00) Dollars in an irrevocable trust, the terms of which are contained in the Declaration of Trust attached hereto and made a part hereof, . . .
 e. The parties agree that the monies being paid hereunder are being paid and accepted in full and complete accord and satisfaction of all claims which may be made in this or any other action arising out of the alleged paternity of the minor child, and the Plaintiff shall execute releases to that effect both individually and as parent and guardian of the minor child. The Plaintiff agrees for herself, individually, and for the minor child not to bring any further actions for support, inheritance or any other obligations arising out of the alleged paternity against the defendant or his estate. The Plaintiff agrees to be fully, solely, and completely responsible for any and all parental or legal support obligations for the minor child past, present, and future. The plaintiff further agrees, for herself and for the child, that the Defendant, upon payment of the sums specified herein, shall not ever again in any place, way, or fashion have to pay any monies for the benefit of said child or be obligated to support said child, hereafter, for any reason whatsoever."
The relevant portions of the IRREVOCABLE TRUST FOR MINOR, DECLARATION OF TRUST, dated May 21, 1991, state as follows:
 "MARIA MCDOUGALL, both individually and as parent, guardian and next best friend of her minor child, TANJA MARIE MCDOUGALL(sic), hereby declares and establishes a trust for the benefit of said minor child, TANJA MARIE MCDOUGALL(sic), in accordance with said Superior Court Order and Stipulation, . . .
 1. TRUST PROPERTY: Pursuant to said settlement stipulation MARIA MCDOUGALL, (hereinafter referred to as the "Declarant"), has received the sum of Twenty-Seven Thousand Five Hundred ($27,500.00) Dollars and has delivered, conveyed, transferred, and paid said sum of money into the Trust for the benefit of the minor child, TANJA MARIE MCDOUGALL(sic), . . .
 2. INCOME PAYMENTS: The Trustee, monthly, may distribute to or for the benefit and support of TANJA MARIE MCDOUGALL(sic), . . ., so much or all of the net income of the Trust Estate as the CT Page 2501 Trustee shall deem advisable in the exercise of their sole discretion . . .
 3. PRINCIPAL PAYMENTS: The Trustee may distribute to or for the benefit of the Beneficiary so much or all of the principal of the Trust Estate as may be necessary for the care, support, maintenance, welfare and education of the Beneficiary. The Trustee shall endeavor in the exercise of her discretion however, to attempt to refrain from the distribution of principal, if the Trustee/Declarant herself has sufficient assets or income to adequately to adequately care for the support needs, maintenance, welfare and education, of the Beneficiary. The Trustee/Declarant shall exercise her best efforts at all times to provide sufficient assets and income to support said child: Notwithstanding the aforesaid, the Trustee may not distribute more than $17,500.00 of principle and shall always keep at least the principal sum of $10,000.00 in the corpus of said trust. It is contemplated that the Trustee/Declarant may disburse up to $17,500.00 of the principal immediately to reimburse herself (the caretaker) for past, present or future expenses which directly or indirectly benefit the child. . . .
 10. TRUSTEE NAMED: The Declarant hereby agrees to appoint as Trustees of the Trustee Estate created hereunder, herself, . . . ."
The court's judgment also contained an "Amendment to Stipulation", dated May 21, 1991, signed by the parties and the court, Langenbach, J., which contained the following:
 "2. In the event any subsequent proceeding of any kind is maintained against the defendant for support of the minor child, the defendant shall receive credit for all sums paid hereunder, as well as the interest earned on said sums in trust from the date of payment.
 3. The plaintiff agrees to be fully, solely, and completely responsible for any and all parental or legal support obligations for the minor child, past, present and future.
 4. The plaintiff agrees to indemnify, save and hold harmless the defendant from any further claims, actions, proceedings for support liability brought against or made against the defendant on behalf of the minor child by any third party."
CT Page 2502 At the time of the court entering judgment, the plaintiff was employed at Fairfield Hills Hospital, and had net weekly earnings of $373.00. The defendant showed net weekly earnings of $220.00 on his financial affidavit, dated May 21, 1991.
On or about 1993, the plaintiff began working at Greater Bridgeport Mental Health Center and earning net weekly income of approximately $325.00. In June, 1993, the plaintiff was involved in a work related automobile accident. The injuries resulting from the accident were substantial, whereby she was kept out of work through at least the end of 1993. During that time, she experienced pain which required medications and bed-rest. She received weekly worker's compensation benefits through the end of 1993.
In late 1993 or early 1994, the plaintiff moved to her mother's home in Puerto Rico with her daughter and their belongings. The move became necessary because the plaintiff had difficulty caring for herself and her daughter during her convalescence, and her mother offered assistance. The plaintiff initially moved in with her mother and the plaintiff contributed to the household's day to day living expenses. After several months, the plaintiff moved out of her mother's residence and into an modest apartment with her daughter at a rent of $300.00 per month. Some seven months later, a fire displaced the plaintiff and her daughter from their apartment, and they were forced to move back with the plaintiffs mother. As a consequence of the fire and their relocation, many of the plaintiffs belongings, furniture and financial records were either destroyed or lost.
Prior to the plaintiff moving to Puerto Rico, the plaintiff had approximately $22,000.00 of the trust monies remaining for the benefit of herself and her daughter. The plaintiff has not filed with this court, or any other court, any detailed accounting of income or expenses connected with the Declaration of Trust, dated May 21, 1991. While living in Puerto Rico, the plaintiffs worker's compensation benefits ceased, and the plaintiff and her daughter lived primarily off of the proceeds of the trust. She incurred expenses in moving to Puerto Rico and in returning. She also incurred expenses for food, housing, clothing and education for herself and her daughter while in Puerto Rico.
Prior to May, 1995, the plaintiff and her daughter moved back to Waterbury, Connecticut, and moved in with the plaintiffs CT Page 2503 sister. On or about May 1, 1995, the entire trust proceeds were depleted, and the plaintiff applied for and was granted assistance from the State of Connecticut under Aid to Families with Dependant Children.
The plaintiff received state assistance for approximately five months. She began working part time in late 1996, and later full time as a health care customer service representative in Hartford. Presently, the plaintiff is employed by the Department of Social Services with a net weekly income of $595.00. Additionally, the plaintiff received a worker's compensation specific award in September of 1996 in the amount of $8,167.88, net of costs and attorney's fees.
In December, 1995, the defendant was working for Fleet Bank, earning approximately four to five hundred dollars per week. That job was short lived, however, and the defendant received unemployment compensation for 26 weeks beginning in February 1996, in the amount of $126.00 per week. When not receiving unemployment compensation, he worked as a substitute teacher for the City of Waterbury, earning fifty dollars per day on those days when he was called to work. During that time, the defendant was living with his parents.
In September, 1997, the defendant returned to school at the University of Bridgeport. While in school, he received work study assignments and earned approximately $112.00 per week. During the summer of 1998, he worked as a loan clerk in New York City, earning approximately $800.00 to $900.00 per week. Since early March of 1999, the defendant has been employed at Leafstone in Bridgeport, and earns a net weekly income of $588.00 per week.
 II.
The court has before it the State's Motion for Modification of a paternity judgment, filed on August 31, 1995.
The court has jurisdiction to hear the Motion. Section46b-171 of the Connecticut General Statutes provides that if a defendant is found to be the father of a child, the court or family support magistrate shall order him to be charged with the support and maintenance of the child. Since the defendant has been adjudicated the father of this child, the court has jurisdiction to issue a support order against the defendant.[1]
CT Page 2504
Since the filing of the motion, the state no longer claims any interest in this case as the plaintiff-mother no longer receives state assistance, and any outstanding arrearage to the State has been paid in full. The plaintiff has appeared with counsel and counsel for the minor child both now claim the motion.
The motion is properly before the court. Section 46b-171(a) of the Connecticut General Statutes provides:
 "(i)f the defendant is found to be the father of the child, the court or family support magistrate shall order him to stand charged with the support and maintenance of such child, with the assistance of the mother if she is financially able, as said court finds, in accordance with the provisions of section 17b-81, 17b-223, 17b-745, subsection (b) of section 17b-179, section 17a-90, 46b-129, 46b-130 or 46 b-215 to be reasonably commensurate with the financial ability of the defendant, and to pay a certain sum periodically until the child attains the age of eighteen years; and the court or family support magistrate shall order him to pay the amount thereof to the complainant, or, if a town or the state has paid such expense, to the town or the state, as the case may be."
The Statute provides that the amount owed can be payable to either the state, or the complainant, in this case the plaintiff-mother. Since the state no longer has an interest in the case, the mother is the beneficiary of the enabling statute and is the party in interest. Therefore, the plaintiff mother and minor child are properly before this court claiming the relief sought by this motion.
 III.
The plaintiff mother is entitled to a modification of her paternity judgment after a showing of a substantial change of circumstances. Section 46b-171(a) further provides:
 "Any order for the payment of support for any such child may at any time thereafter be set aside, altered or modified by any court issuing such order upon a showing of a substantial change in the circumstances of the defendant or the mother of such child or upon a showing that such order substantially CT Page 2505 deviates from the child support guidelines established pursuant to section 46b-215a, unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. There shall be a rebuttable presumption that any deviation of less than fifteen per cent from the child support guidelines is not substantial and any deviation of fifteen per cent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on or after May 9, 1991. No such support orders may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for a modification of an existing support order from the date of service notice of such pending motion upon the opposing party pursuant to section 52-50."
The court finds that there has been a substantial change in circumstances since the date of the judgment. The plaintiff mother incurred a work related injury in June of 1993, and was without any income for over eighteen months, other than six months of worker's compensation benefits. Further, she and her daughter sustained losses of personal property in a fire while she lived in Puerto Rico. The income and principal from the trust were depleted by May, 1995, when the plaintiff sought and was granted state assistance. The mother has solely provided for the support and maintenance of the child since she discontinued from state assistance. Meanwhile, the defendant's net income is now $588.00 per week, which is a substantial increase from his $220.00 per week net earnings at the time of the judgment.
The defendant claims that the judgment is not modifiable by its terms and by virtue of the court accepting the parties stipulation and making it an order of the court. However, at the time the judgment entered, the minor child was unrepresented. Counsel for the minor child has filed a brief in support of this motion and requests the court to enter an order for periodic support.
The common law rule prohibits parents from contractually restricting their children's right to support. "In Burke v. Burke, 137 Conn. 74, 79, 75 A.2d 42 (1950), we held that an agreement concerning child support executed between a separating husband and wife did not afford a defense against the right of action by the couple's two minor children against their father CT Page 2506 for additional support. "[N]o such contract by a father can restrict or preclude the power of the court to decree what he shall pay for the support of a dependent minor child. A husband and wife cannot make a contract with each other regarding the maintenance or custody of their child which the court is compelled to enforce, nor can the husband relieve himself of his primary liability to maintain his child by entering into a contract with someone else to do so. The welfare of the child is the primary consideration. The court `may recognize the contract, but such contract will not be enforced longer than it appears to be for the best interests of the child, and parents entering into such a contract are presumed to do so in contemplation of their obligations under the law and the rights of the child,'" Guillev. Guille, 196 Conn. 260, 263 (1985).
A non-modifiable child support agreement and court order cannot bind the child where the children are unrepresented at the time of the agreement. "It is a fundamental premise of due process that a court cannot adjudicate a matter until the persons directly concerned have been notified of its pendency and have been given a reasonable opportunity to be heard in sufficient time to prepare their positions on the issues involved." id. at 268.[2]
Further, the legislative purpose behind the Connecticut child support enforcement statutes has been to guarantee that children receive adequate child support from their parents. "Since 1984, the United States Congress has actively encouraged states to take measures to assure that children receive adequate financial support from their parents, thereby reducing government expenditures for their children," Turner v. Turner,219 Conn. 703, 713 (1991). The facts in this case highlight the need for such legislation; whereby, when the plaintiffs circumstances changed, she was forced to turn to the government to support the defendant's child.
The defendant also cites in his brief the recent Appellate Court decision of Amodio v. Amodio, 56 Conn. App. 459 (2000), as authority to uphold the non-modifiable provisions of the court judgment. That case does not apply due to the fact that its analysis deals with C.G.S. Section 46b-86, the dissolution of marriage modification statute. The matter before us is a post judgment paternity matter, which modification provisions are found in C.G.S. Section 46b-171. The provisions of both statutes are similar, except for the phrase "unless and to the extent the CT Page 2507 decree precludes modification". Since that phrase is not included in C.G.S. Section 46b-171, Amodio does not apply to post judgment paternity matters.
 IV.
Since there has been a substantial change in circumstances and the modification is not barred as a matter of law, the court turns to the issue of the defendant's support obligation. The guidelines as prepared by the plaintiff indicate that the defendant's obligation should be $98.00 per week. The defendant did not dispute that amount. The court orders that the defendant pay in accordance with the guidelines $98.00 per week as current support.
Regarding any arrearage, the court, Forman, FSM, ordered that any modification orders be retroactive to November 30, 1995. Other than a three month period during the summer of 1998 when the defendant worked in New York earning $21.00 per hour, and six weeks from December of 1995 and January 1996, the defendant's income was below $145.00 per week, the self support reserve. In addition, the amendment to the stipulated judgment provides that the defendant is to be credited for his initial $27,500.00 payment. Therefore, the court will not find any arrearage prior to June, 1998. Since early March, 1999, the defendant has worked at Leafstone, earning $588.00 per week. Therefore, the plaintiffs arrearage is found to be $6174.00, ($98.00 per week × 63 weeks; covering the period of time from June 1, 1998 to August 31, 1998, and from March 1, 1999 to February 22, 2000). The defendant is ordered to pay $17.00 per week on said arrearage. Income withholding is ordered.
The plaintiff mother is ordered to continue to provide medical insurance for the child so long as is available through her employment at a reasonable cost. If the medical is not so available to the mother, then the defendant is ordered to provide such medical coverage if available at a reasonable cost through his employment. The provisions of Section 46b-84e of the General Statutes are adopted as if set forth in full.
Paul Matasavage, Family Support Magistrate